## HERRING v. SUTTON.

(Filed October 15, 1901.)

INSURANCE—*Life Insurance—Vested Rights—Guardian and Ward
   —Trusts—Beneficiary—Policy.*

   Where a father who is the guardian of his children insures his
      life for their benefit, and his sureties are influenced to sign
      his guardian bond by the promise that the policy was for
      the protection of his wards and sureties, the policy vests
      in the wards and a trust is not raised for the benefit of the
      sureties.

Cook, J., dissenting.

ACTION by Edward Herring, as guardian of John H. and

HERRING *v.* SUTTON.

Annie L. Sutton, against Mary F. Sutton, executrix of B. F. Sutton, Jr., and others, heard by Judge *O. H. Allen,* at December (Special) Term, 1900, of the Superior Court of LENOIR County.   From a judgment for the plaintiff, the defendants appealed.

*N. J. Rouse,* for the plaintiff.
*Shepherd & Shepherd,* for the defendants.

FURCHES, C. J.   This is an action on a guardian bond given by B. F. Sutton, Jr., in the sum of $2,600 as guardian of his two minor children, J. H. Sutton and Annie L. Sutton, with Junius E. Sutton, Thomas Sutton and Flavius Allen as his sureties.   The guardian is dead, and Mary F. Sutton is his executrix.

The case was referred to Mr. Ormond to find the facts, declare the law and report the same to the Court, which he did.   Besides finding the amount due on said guardianship, he further found as follows: "That B. F. Sutton, deceased, had no insurance for any of his other children or widow, and at the time of taking out said insurance policy, in the name of his said wards, John Hardy Sutton and Annie Laura Sutton, it was his purpose, and he so declared it to be, to protect said wards and his bondsmen against any loss which might occur to the estate of said wards."

He also found: "That when the defendant Junius E. Sutton signed the guardian bond of said B. F. Sutton, Jr., he was influenced to do so by the promise of said B. F. Sutton to have his life insured for the protection of his wards and sureties."

The referee then declares as a matter of law that these facts did not constitute the said John H. and Annie L. Sutton trustees of the insurance policy, or the money collected thereon.   The defendants excepted to the facts and the law

as found and declared by the referee. But upon the hearing of the report before the Judge, the same in all things was confirmed, and judgment given for the plaintiff, from which defendants appealed.

Upon B. F. Sutton's taking out this policy of insurance, naming his two children, J. H. and Annie L. Sutton, the beneficiaries therein, it became theirs. They had a vested right of property therein, of which they could not be divested without their consent. *Burton v. Farinholt,* 86 N. C., 260; *Bank of Washington v. Hume,* 128 U. S., 195. This is so, unless they took and held it in trust as contended by defendants. And this contention seems to be settled against them by the case of *Wood v. Cherry,* 73 N. C., 110. We quote with approval the introduction of Chief Justice PEARSON's opinion in that case as especially applicable to this case: "According to *justice,* using the word in its broadest sense, as distinguished from law or equity, the defendant ought not to be disturbed in her occupation of the premises during her lifetime or widowhood, and we have considered the case in every point of view to see if we could sustain the decision of his Honor in her favor. But we can find no ground on which to do so."

The Court then says: "The *promise* of Wood can not be enforced on the ground of its creating a trust, for the trust can only be created in one of four ways:

"1. By *transmission of the legal estate,* when a simple declaration will raise the use or trust.

"2. A contract, based upon *valuable consideration* to stand seized to the use or in trust for another.

"3. A covenant to stand seized to the use or in trust for another upon *good consideration.*

"4. When the Court, by its decree, *converts a party into a trustee* on the ground of fraud."

The allegation of the defendants in this case is that John

HERRING *v.* SUTTON.

H. Sutton and Annie L. Sutton are trustees of the $2,000 collected upon this policy of insurance out of the insurance company, for the benefit of the defendants.    And if they are, it is because they fall within one of the four reasons stated above.

It can not be that they are trustees under the first ground, as there is no *transmission* of a legal estate.    The policy of insurance is only a chose—a promise to pay the defendants $2,000 upon certain conditions and contingencies, which might be defeated by B. F. Sutton's not paying the premiums, and by the company's cancelling the policy.

It can not be under the second ground, as there is no contract on the part of John and Laura to stand seized to the use of the defendants.

It can not be under the third ground, as there is no *covenant* on the part of John and Annie to stand seized to the use of, or in trust for, the defendants.

It can not be under the fourth ground, as it is not alleged that there is any fraud in the transaction on the part of B. F. Sutton, John H. Sutton, or Annie L. Sutton.

It therefore seems plain to us that neither John H. nor Annie L. Sutton, nor their guardian, are trustees for the benefit of the defendant of the money collected from the insurance company, and the judgment below must be affirmed.

Affirmed.

COOK, J., dissenting:    I do not concur with the Court in its opinion in this case.    The report of the referee shows a clear and distinct agreement between the obligor of the bond, B. F. Sutton, Jr., and Junius E. Sutton, one of his sureties on behalf of himself and co-sureties.    He signed the same and assumed the liability upon the inducement and promise that he, the guardian, would insure his life for the protection of his wards and bondsmen.    In compliance with this agree-

ment, he did take out a life-policy for the sum of $2,000 with the declared purpose of protecting said wards and bondsmen against any loss which might occur to the estate of said wards. The indemnity was required because the guardian was not a man of means. The policy was issued in the names of John and Laura. The guardian died after having squandered the wards' funds, and the present plaintiffs qualified as their guardians, collected the amount of the insurance policy, and now sue upon breach of the bond for the penalty, to be discharged upon payment of about $1,500, the amount of default.

Defendants contend that John and Laura became trustees of the insurance policy for the benefit primarily of defendants, and that the fund when collected should be applied first to discharge the liabilities of the sureties upon the guardian bond. This contention seems to me to be sound in law and equity. In giving effect to it, the guardian fund is protected and made whole, and a great wrong and hardship to the sureties averted.

There was a contract entered into between the guardian and sureties based upon a valuable consideration, viz, the assumption of an obligation to pay money for him, which became executed when the policy was taken out. The legal title to the policy was placed in John and Laura, but the record shows that it was done with the expressed intention and purpose of the assured to create a fund in compliance with his agreement with Junius E. Sutton, to secure the money due said wards and protect his said sureties. The language and acts of the parties were unequivocal, and there can be no doubt about the intention of the parties that the policy should be held in trust, which they had a right to create by parol. Adams Eq., 28; Beach on Mod. Eq. Jur., sec. 161. And there can be no question as to the right of an obligor to in-

sure his life for the protection of a surety upon an official bond. *Scott v. Dickson,* 108 Pa. St., 6, 56 Am. Rep., 192.

In creating this trust by parol, it was not material whether the trustees accepted or declined—in fact, they were infants and incapable of accepting, declining or acting—for a court of equity will not allow a trust to fail for want of a trustee, nor be vitiated by reason of the incapacity of the trustee named, on account of infancy, lunacy or otherwise; any defect of this character would be supplied by the Court.

The plaintiff further contends that the funds arising from the policy belong to his wards, John and Laura, because they were the children of the assured, and that the father is entitled by law (Constitution, Art. X, sec. 7) to insure his life for the benefit of his (wife and) children, and the amount thus insured shall be paid over "free from all claims of his representatives or any of his creditors." This contention would be sound if the insurance had been effected *solely* for their benefit. But the record shows that it was not so effected. The assured had four children besides John and Laura, two of whom were still younger—and for neither of these was any benefit provided by the policy. John and Laura were his creditors, and the insurance was obtained for them as his wards, who, as such wards and creditors, had an insurable interest in his life, independent of the relationship, which clearly appears to have been the sole motive prompting the parties in taking out this insurance.

The Constitution (Art. X, sec. 7) does not impose any obligation upon the father to insure his life for the sole use of his children (and wife), but simply *licenses* him to do so. "The husband may insure his own life for the sole use and benefit of his wife and children, and in case of the death of the husband the amount thus insured shall be paid over to the wife and children, or to the guardian, if under age, for her or their own use, free from all the claims of the repre-

sentatives of her husband, or any of his creditors." He *may* so insure his life, or otherwise, as he may deem fit. He *may* insure it for the benefit of creditors, or in part for creditors and in part for wife and children. *Am., etc., Insurance Co. v. Robertshaw,* 26 Pa. St., 189. In effecting the insurance, he has the right to do so for the benefit of *any* one who may have an insurable interest in his life. The only guarantee given him by our Constitution is that, having insured for the benefit of his wife and children, the amount thus insured shall be their property and no part of his estate; or he may insure it for his own benefit so as to make it assets in the hands of his personal representative.

It is true a presumption of law arises when a father takes title to property in the name of a child, that he intended to make a provision for the child and not to create a trust, which presumption becomes still stronger when the child is an infant and legally incapable of acting as a trustee for the father. But in this case it was not the intention or purpose that the beneficiaries named should have an absolute estate and interest in the policy, which is clearly shown by the facts found and rebuts the presumption of law raised in their favor. The fact that it was placed in the names of John and Laura gives them no greater right or interest than was intended by the party creating the trust. They paid nothing for the policy, and obtained only such title as was intended by the creator of the trust—being infants, they did not and could not consent or act. It became their property charged with such incumbrance as their father had seen fit to place upon it; and, in this instance, it was a proper and honest charge, and the contention of the plaintiff ought not to prevail. All that the plaintiff could in good conscience expect and require from the sureties on the bond of his wards' father, was the full amount of their money which they had obligated to secure

and make good to them, and this they have received, for it was at the instance of Junius E. Sutton that the policy was taken out, and the condition upon which he signed the bond and became liable, and it has enured to the full benefit of his wards, for which they should be content.

After receiving every dollar of their money from the source provided for that purpose by Junius on behalf of himself and co-sureties, it would be unconscionable as well as gross injustice for the plaintiff to recover the amount again out of the property of the sureties. I therefore think that the proceeds of the policy ought to be applied, first, to the discharge of the liability of the sureties upon the bond.