W. V. PARKER, ADMINISTRATOR OF MAGGIE F. GROVES, DECEASED, V. F. L. POTTER, ADMINISTRATOR OF JOHN A. GROVES, DECEASED, AND REBECCA J. GROVES.

(Filed 18 February, 1931.)

**1. Insurance N a—Where wife of insured is named beneficiary and insured kills his wife and himself the proceeds descend to heirs of wife.**

Where a husband has taken out a policy of life insurance on his own life with his wife as beneficiary and has feloniously killed his wife and then himself, his heirs may not claim under him the proceeds of the policy since the law will not allow a man or those claiming under him to benefit by his own wrong, and the proceeds of the policy are descendible to the next of kin of the wife and not to his heirs at-law. C. S., 10, 2522, 137.

**2. Same—Mother of insured named beneficiary in case of prior death of wife held entitled to proceeds though insured murdered his wife.**

Where a policy of life insurance by its express terms fixes the beneficiary as the mother of the insured in the event of the prior death of the insured's wife, and the insured feloniously kills his wife and then himself, the proceeds of the policy are payable to the insured's mother under the express provisions of the policy contract itself.

**3. Descent and Distribution B e—C. S., 2522 applies where it is admitted that husband feloniously killed wife.**

The provisions of C. S., 2522, denying to the husband or wife "convicted" of killing the other the right in the personal property of the other does not require a conviction of the offense where it is admitted that the homicide had been committed.

APPEAL by plaintiff and by defendant, F. L. Potter, administrator, from *Grady, J.,* at March Term, 1930, of DUPLIN.

A trial by jury was waived and the parties agreed upon the following statement of the facts:

1. J. A. Groves and his wife, Maggie Groves, were living together as man and wife at Magnolia, N. C.; they had no children, and on 3 April, 1929, the said J. A. Groves wrongfully, unlawfully and feloniously shot and killed his said wife, Maggie Groves, and thereafter committed suicide; the said J. A. Groves being at that time 55 years of age, and Maggie Groves being 44 years of age.

2. At the time of said homicide and suicide J. A. Groves had a policy of insurance in the Mutual Life Insurance Company of Maine for $1,000, which policy was payable to Maggie Groves, wife of said J. A. Groves.

At said time the said J. A. Groves had another policy of life insurance in the Woodmen of the World, which was payable to his wife, Maggie Groves, or in the event of her death, prior to that of J. A. Groves, to Rebecca J. Groves, the mother of the said J. A. Groves, she being the next of kin to J. A. Groves, and being the person named in said policy as beneficiary, in case of the death of the said Maggie Groves prior to the death of her husband. Said policy has been collected by the administrator of J. A. Groves, and the amount thereof, to wit, $1,000, is now on deposit in the bank to await the further orders of the court in this action.

The $1,000 policy issued by the Mutual Life Insurance Company of Maine has also been collected by F. L. Potter, administrator of J. A. Groves, and is now being held to await the further orders of the court in this action.

3. At the time of his death J. A. Groves owned real and personal property, and owed some debts, and there were mortgage liens upon his real estate; but the value of his real and personal estate and the amount of his debts cannot be ascertained at this time. It is agreed by all parties that this matter, in respect to the net value of said estate is to be reserved and passed upon by a jury, together with an issue as to damage for the wrongful death of the said Maggie Groves, but it is agreed that the court shall pass at this time upon the legal questions raised by the pleadings as to the respective interests of the parties in

and to the two policies of life insurance above referred to, and as to the interest, if any, of the administrator of said Maggie Groves, in and to the real and personal estate of her deceased husband.

There are four separate causes of action declared upon in the pleadings:

(a) W. V. Parker, administrator of Maggie F. Groves, claims to be the owner of the proceeds from the two life insurance policies hereinbefore referred to, as against the administrator of J. A. Groves, who also claims the proceeds from said two policies.

(b) W. V. Parker, administrator of Maggie Groves, also claims and alleges that he is entitled to recover from the estate of J. A. Groves, deceased, the value of the dower right of his intestate in and to the estate of J. A. Groves, also one-half of the personal estate as distributee under the statutes, and also $300 in addition thereto, representing the value of her year's support.

(c) Mrs. Rebecca J. Groves, the mother and nearest of kin to J. A. Groves, deceased, claims to be the owner in her own right of the $1,000 collected from the Woodmen of the World on the policy hereinbefore referred to.

(d) W. V. Parker, administrator of Maggie Groves, claims damages out of the estate of the said J. A. Groves on account of her wrongful death, which is admitted to have been caused by a felonious act on the part of J. A. Groves, deceased.

The court is requested to pass upon the contentions of parties in respect to causes (a), (b), (c) as named above; but as to cause (d), as set out above, it is agreed by all parties that this question may be postponed and tried before the court and jury at some subsequent term.

Upon the foregoing facts, the court is of the opinion that because of the felonious slaying of his wife, the estate of J. A. Groves is not entitled to any part of the proceeds collected by F. L. Potter, administrator, from the Mutual Life Insurance Company of Maine, but that the proceeds thereof should belong to W. V. Parker, administrator of the said Maggie Groves. The court is also of the opinion that the proceeds from the policy issued by the Woodmen of the World, and now in the hands of the defendant, J. A. Groves, deceased, is the property of the defendant, Rebecca J. Groves, who is admitted to be the beneficiary named in said policy, in the event of the prior death of the said Maggie Groves.

The court is also of the opinion upon the admitted facts that W. V. Parker, administrator of Maggie Groves, deceased, is not entitled to recover anything in this action in respect to the dower right of his intestate, or of any rights that she may have had as widow or distributee of the estate of the said J. A. Groves, and in respect to this cause of action the same is dismissed.

It was thereupon adjudged that the plaintiff recover of the defendant, F. L. Potter, administrator of John A. Groves, $1,000 collected by said administrator from the Mutual Life Insurance Company of Maine; that the defendant Rebecca J. Groves recover of said administrator $1,000 collected from the Woodmen of the World; that the plaintiff is not entitled to recover anything out of the estate of John A. Groves because of any dower right his intestate might have had or because she was the widow and a distributee of her deceased husband, and that the action for wrongful death be continued.

The plaintiff and the defendant F. L. Potter, administrator, excepted and appealed.

It was agreed by the parties that sections 4 and 5 in the policy issued by the Woodmen of the World are the only provisions applicable to the questions arising upon said policy. The sections are as follows:

"Section 4. Applications—Applications must be made on forms prescribed by the Sovereign Commander, stating the amount desired and naming the beneficiary and relationship to applicant, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers and sisters, or other blood relations, or persons dependent upon the member. If the beneficiary named is not one of said class of persons, the certificate shall be null and void.

"Section 5. Beneficiaries—The beneficiary or beneficiaries shall be designated in every beneficiary certificate issued and shall be only of the class named above. In the event of the death of all the beneficiaries designated before the death of the member, if no new designation has been made, the benefits shall be paid to the surviving widow and surviving children of the member, share and share alike, provided such widow shall not be entitled to any benefits if she shall have been divorced; *provided further,* that if there be no surviving widow, the surviving children, if any, shall be entitled to all of such benefits, and if there be no surviving children, then the surviving widow, if any, shall be entitled to the benefits; but if there be no surviving wife or children, such benefits shall be paid to the next living relation of the member in the order named in class of beneficiaries named in paragraph 4 above, and those of the half blood shall share equally with those of the full blood."

It is admitted that since the hearing of this cause that F. L. Potter, administrator, has died, and that Nellie Susan Outlaw is now the duly qualified and acting administrator *de bonis non* of the said estate, and has by her own motion been made a party hereto.

*Butler & Butler for plaintiff.*

*Beasley & Stevens, J. Faison Thomson, J. T. Gresham, Jr., and R. D. Johnson for defendants.*

ADAMS, J. It is a fundamental maxim of the common law that no man should take advantage of his own wrong. Not only is the maxim based on elementary principles; it is firmly embedded in our jurisprudence, and as remarked by Broom, it admits of illustrations from every branch of legal procedure. Legal Maxims, 275. One of these illustrations is given in *Anderson v. Parker,* 152 N. C., 1, in which it is said that the beneficiary in a policy of insurance who has caused or procured the death of the insured under circumstances amounting to a felony will not be allowed to recover on the policy. As the Court observed, this wholesome doctrine has been uniformly upheld except where the interest involved was conferred by statute and the statute itself did not recognize any exceptions. 2 Couch, Cyc. of Ins. Law, 1018.

Conversely, if a husband insures his life for the benefit of his wife and afterwards feloniously takes her life neither he nor his estate will be permitted to profit by his wrong. "To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by the criminal and felonious act of the devisee himself. And, in applying this rule, no distinction can be made between a death caused by murder and one caused by manslaughter. Nor does the common-law right of succession by descent operate in favor of one who wilfully takes the life of his ancestor for the purpose of succeeding to his property rights. And the common-law right of a man to succeed to the property of his wife upon her death does not operate in favor of one who murders his wife. And the rule that the common-law doctrine of succession to property does not operate in favor of one who wilfully takes the life of his ancestor should apply against any person claiming through or under the slayer. Nor does a rule of law that a common-law right of succession to property does not operate in favor of one who wilfully takes the life of his ancestor contravene a constitutional provision that a conviction of crime shall not work a forfeiture of the estate." Wharton on Homicide (3 ed.), sec. 665. As observed by *Mr. Justice Field* in *Mutual Life Ins. Co. v. Armstrong,* 117 U. S., 591, 29 Law Ed., 997, "It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken." Among the decisions in accord with this are *New York Life Ins. Co. v. Davis,* 44 L. R. A. (Va.), 305; *Supreme Eq. Life Assur. Society v. Weightman,* 66 L. R. A. (Okla.), 1210.

There is an exhaustive discussion of the question here presented in *Box v. Lanier,* 112 Tenn., 393. The material facts as therein stated were as follows: A husband obtained an insurance policy on his life in the sum of $10,000, which was payable to the wife of the assured should

she survive; otherwise to his representatives. Immediately after its issuance he delivered the policy to his wife with the statement that it was her policy and that she must pay the premiums accruing on it. Out of her own estate all of the premiums were paid by her and the policy from the time it was delivered to her until her death was in her possession and under her control. Some time afterwards the husband feloniously took the life of his wife and then inflicted upon himself a mortal wound from the effect of which he died a few hours later.

The plaintiff insisted that the policy was a right existing in his intestate at the time of her death, and that while, under ordinary conditions, it would have vested in the husband surviving, *jure mariti,* yet, inasmuch as the survivorship was brought about by his felonious act, his estate should not be permitted to make profit out of it, and that the policy or its proceeds should be preserved to the representative of her estate for the benefit of her children who were her distributees. It was contended by the defendant that the husband by the terms of the policy had a fixed right in it, defeasible only upon the wife's surviving him, and, if not, the husband's right accrued to him *jure mariti,* and that this right should not be forfeited by the murder of his wife.

Sustaining the plaintiff's contention, the Court said: "It has been well said that there are certain general and fundamental maxims of the common law which control laws as well as contracts. Among these are: 'No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries.' These maxims embodied in the common law, and constituting an essential part of its warp and woof, are found announced both in text-books and in reported cases. Without their recognition and enforcement by the courts, their judgments would excite the indignation of all right-thinking people. The first of these maxims is applied in order to prevent one from taking the benefit of his own fraud. Why should not the last be enforced so as to forbid a party receiving the fruits of his own crime?"

And on the petition to rehear, it was further remarked: "We think that every legal and equitable consideration tend to support the claim of her administrator, and that, as a matter of right, as well as of sound public policy, the proceeds should pass to those of her blood who stood in closest relationship with her at the time of her death, to wit, her children, rather than to the representatives of one whose claim rests alone upon his felonious act."

Upon this broad principle it is held that a husband who murders his wife has no interest in her estate *jure mariti.* In *Perry v. Strawbridge,*

12—200

209 Mo., 621, 646, it was said that a provision that no conviction shall work a forfeiture of estate has no relation to the devolution of property; that it is intended to prevent forfeiture of a criminal's estate on account of his offense; that a surviving husband who had feloniously killed his wife acquired no estate in her property; and that there was nothing upon which the constitutional provision could operate.  Distinction has been noted between the divesting of property and the denial of one's right to inherit—the rule generally approved being this: that public policy and the administration of justice prevent one from acquiring title to property which he seeks to obtain by murder.  *Garwols v. Bankers Trust Co.,* 232 N. W. (Mich.), 239; *Shellenberger v. Ransom,* 28 A. S. R. (Neb.), 500; *Riggs v. Palmer,* 12 A. S. R. (N. Y.), 819; *Barnett v. Couey,* 27 S. W. (Mo.), 757; *Van Alslyne v. Taffy,* 169 N. Y. S., 173; *Bryant v. Bryant,* 193 N. C., 372.  Nor is it necessary that there be an express exception in the policy forbidding a recovery by a beneficiary who intentionally kills the insured.  *Metropolitan Life Ins. Co. v. Shane,* 135 S. W. (Ark.), 836.

It may be deduced from what we have said that the same principle of public policy which precludes the defendant from claiming the proceeds of the insurance as the administrator of the deceased husband directly under the contract of insurance, precludes him from claiming the proceeds on the ground that his intestate was a distributee of the deceased wife's estate.  *Slocum v. Metropolitan Life Ins. Co.,* 245 Mass., 565; C. S., 10, 2522.

Since the defendant's intestate had no right to the insurance money under the contract or as distributee of his deceased wife's estate, Rebecca J. Groves, the mother of the assured, is precluded from claiming it solely for the reason that she is his next of kin.  C. S., 137; *Wells v. Wells,* 158 N. C., 330; *In re Pruden,* 199 N. C., 256; *Schmidt v. Northern Life Association,* 51 L. R. A. (Iowa), 141.

Does it therefore necessarily follow that Rebecca J. Groves is not entitled to the amount collected on the policy of the Woodmen of the World?  The answer must be sought in the terms of the contract; for "the status of a beneficiary designated as such in an insurance policy or benefit certificate depends entirely upon the terms of the contract of insurance, construed in accordance with the rules of interpretation and construction applicable to such contracts, he being held chargeable with notice of the contents of the same."  2 Couch Cyc. of Ins. Law, sec. 306.

This proposition calls for a determination of the deceased wife's interest in the contract.  Was it vested or contingent?  If she had an unconditional vested right her status was such that the insured could not destroy her interest without her consent except as he could destroy

his own right or interest by a forfeiture of the policy. *Conigland v. Smith,* 79 N. C., 303, modified in *Hooker v. Sugg,* 102 N. C., 115. In an ordinary policy of life insurance, the beneficiary acquires a vested interest from the time the insurance takes effect, if in the contract there is no stipulation reserving to the insured a right to change the beneficiary, assign the policy, or divert the proceeds, unless the language of the policy is inconsistent with a vested interest. *Herring v. Sutton,* 129 N. C., 107; *Lanier v. Ins. Co.,* 142 N. C., 14; *Wooten v. Order of Odd Fellows,* 176 N. C., 52; *Lockhart v. Ins. Co.,* 193 N. C., 8. This principle, however, does not prevail where the right or interest of a particular beneficiary is subject to be changed or to be defeated under the terms of the contract by which it was created. *Wooten v. Order, etc., supra; Pollock v. Household of Ruth,* 150 N. C., 211. If thus subject to be changed or defeated the interest of the beneficiary is not property but a mere expectancy, which cannot ripen into a vested interest before the death of the insured.

In the case before us Maggie F. Groves was the beneficiary. There was no change or attempted change by the insured. The succession of beneficiaries is definitely pointed out in the fifth section of the contract: "If there be no surviving wife or children, such benefits shall be paid to the next living relations of the member in the order named in the class of beneficiaries in paragraph four." There were no children. The interest of the wife was contingent upon her surviving her husband, and her death, occurring before his, terminated her contingent interest. 2 Couch, Cyc., etc., 999. The right to the proceeds of the policy thus passed to the next living relation of the insured, who is his mother. *Entwistle v. Traveler's Ins. Co.,* 51 At. (Penn.), 759; *Conn. Mut. Life Ins. Co. v. Burroughs,* 91 A. D. (Conn.), 725; *Germania Life Ins. Co. v. Wirtz,* 162 N. W. (Mich.), 981.

If it be granted that Rebecca J. Groves is in the class named in section four by reason of privity in blood with the insured, it does not follow that her status as beneficiary is not definitely fixed by the terms of the contract. Indeed, her interest is derived from the contract and is not affected by any asserted analogy between a devise and a contract of insurance. *Conigland v. Smith, supra.* The plaintiff, therefore, is not entitled to the proceeds of the policy issued by the Woodmen of the World.

We find no error in that part of the judgment which dismisses the plaintiff's second cause of action, based upon an alleged right to recover the value of his intestate's dower right, her year's support, and one-half the personal estate as distributee of the insured.

On the plaintiff's appeal the judgment is affirmed.

APPEAL BY DEFENDANT, F. L. POTTER, ADMINISTRATOR.

ADAMS, J. His Honor adjudged that the plaintiff is entitled to the money collected on the policy of the Mutual Life Insurance Company of Maine. The defendant excepted on the ground that the deceased husband was never convicted of the felonious slaying of his wife. True, the statute provides that if either husband or wife shall be convicted of the felonious slaying of the other, or of being accessory before the fact, the party so convicted shall thereby lose all his or her right . . . in the real or personal estate of the other party. C. S., 2522.

One of the admitted facts is this: the homicide committed by J. A. Groves was unlawful, wrongful, and felonious. A fact is a fact, whether determined by a jury or admitted by the parties. The defendant, having made the admission, has no reason to complain because his intestate was not technically convicted by a jury.

It will be noted, in addition, that Maggie F. Groves acquired a vested right by virtue of this policy, of which she could not be deprived without her consent. *Herring v. Sutton, supra,; Lanier v. Ins. Co., supra; Wooten v. Order of Odd Fellows, supra; Lockhart v. Ins. Co., supra.*

On the defendant's appeal the judgment is affirmed.