William D. ROBBINS, As Administrator of the Estate of Michael Yosin, Deceased, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Defendant and Third-Party Plaintiff,

and

Lillie A. Thrower, As Administratrix of the Estate of Martha Clara Yosin, Deceased, Intervening Third-Party Defendant.

Civ. A. No. 866.

United States District Court
N. D. Florida,
Pensacola Division.

Dec. 24, 1958.

John L. Reese and William S. Rowley, Pensacola, Fla., for plaintiff.

Keen, O'Kelley & Spitz, Tallahassee, Fla., for defendant and third-party plaintiff.

Robert P. Gaines, Yonge, Beggs & Lane, Pensacola, Fla., for intervening third-party defendant.

CARSWELL, Chief Judge.

This is an interpleader action to determine the right to proceeds of a life insurance policy.

The insured, Michael Yosin, named his wife, Clara, as sole beneficiary, but the policy expressly provided that the insured reserved the right to redesignate the beneficiary. There were no children of this marriage, although there were issue of each spouse by former marriage. Marital difficulties beset the domestic tranquility of this couple, and in a fit of rage, the husband shot the wife. In his frenzy he also took his own life. Within a span of a few hours both were dead.

The only disputed issue of fact was which of the two died first. Testimony was taken and this special question was submitted to a trial jury, which found that Clara Yosin predeceased her husband, Michael.

It is the position of the husband's heirs that Clara Yosin had only a contingent interest as the beneficiary of the policy, as plainly shown by the policy itself, and that this contingency terminated upon her predeceasing the insured, and that, accordingly, under law the proceeds should be paid to his estate.

It is the contention of the heirs of the wife that the husband's felonious killing of the beneficiary forfeits all rights to proceeds, which his estate would otherwise enjoy, that this Court should not allow the murderer's estate to be embellished at the expense of his victim's heirs, and they call upon the Court to sweep aside the normal operation of law in the name of public policy, in the name of right and justice. Its tone carries the stern admonition of a familiar Old Testament passage:

> "Keeping mercy for thousands, forgiving iniquity and transgression and sin, and that will by no means clear the guilty; visiting the iniquity of the fathers upon the children, and upon the children's children, unto the third and to the fourth generation." Exodus 34:7

Unquestionably, the law is clear that Mrs. Yosin's interest in the policy was a mere expectancy subject to a defeasance in the event she died before the insured. She was only a contingent beneficiary, and her death occurring before that of the insured, all rights to her and to her estate were extinguished. 29 Am.Jur., Insurance, Section 1276. Moon v. Williams, 1931, 102 Fla. 214, 135 So. 555; Cadore v. Cadore, Fla., 1953, 67 So.2d 635.

The question, then, is whether the felonious slaying of the contingent beneficiary by the insured works a forfeiture or otherwise estops the proceeds from being paid into his estate. It was plainly the rule at common law that a murderer, or person claiming through him, could not through testacy or intestacy benefit from his own iniquity. Wharton on Homicide, 3rd Ed., Section 665. The same principle in Florida and elsewhere is uniformly applied to beneficiaries who feloniously take the life of the insured. Carter v. Carter, Fla., 1956, 88 So.2d 153.

Only a few jurisdictions have had the problem of determining the right to the proceeds of a policy where the beneficiary was murdered by the insured.

In Box v. Lanier, 1904, 112 Tenn. 393, 79 S.W. 1042, 64 L.R.A. 458, where a husband procured a policy upon his life, naming the wife as beneficiary, and shortly thereafter gave the policy to the wife with instructions for her to pay the premiums, and then the husband killed the wife and committed suicide, the Court in a contest between respective administrators awarded the proceeds to the wife's estate. There the Court invoked the familiar rule of public policy that one cannot benefit from his wrongdoing, but the Court also found that giving the policy to the wife prior to the felonious act was a parol assignment, necessarily vesting the right to the proceeds in her, so that the murdering husband could conceivably profit from his crime by right of survivorship. Relying on the decision in Box v. Lanier, supra, the Supreme Court of North Carolina in

Parker v. Potter, 1931, 200 N.C. 348, 157 S.E. 68, denied relief to the estate of the felon-insured, and directed the proceeds to be paid to the estate of the deceased beneficiary, but in this case the Court did not determine the character or nature of the deceased beneficiary's interest in the policy *prior to* the death of the insured.

In a factual situation analogous to the one here, the Court of Chancery of New Jersey in Union Central Life Insurance Company v. Elizabeth Trust Company, 1936, 119 N.J.Eq. 505, 183 A. 181, allowed the estate of insured the right of recovery, although the insured's felonious act had caused the death of the beneficiary, and although interest was contingent because of the insured's right to redesignate the beneficiary.

Thus, the Court clearly recognized that no man shall found a claim upon his own iniquity or acquire property by his own crime, recognizing, however, that the objective of the rule was to preclude the murderer from enjoying the fruits of his own evil and that public policy is based upon the theory that the murderer himself intends to enjoy the fruits, such enjoyment presumed to be one of the reasons he murdered her; that, however, here he could have no enjoyment of it, he could not have had such intent, and, consequently, when the reason for the application of the rule does not exist, the rule cannot be invoked.

While there are no pronouncements from the Florida Courts on this precise question, it appears that the underlying reason for allowing the heirs at law of the murdering husband to inherit one-half the property formerly held as an estate by the entirety with his wife, whom he murdered, was that public policy does not preclude one estate fom enjoying that which he "owned". Ashwood v. Patterson, Fla.1951, 49 So.2d 848.

It would tax the credulity of this Court to find that Michael Yosin was materially benefited or sought to benefit his estate by his crime, where by the stroke of his pen he could have redesignated a beneficiary. The only conclusion consonant from his conduct is that he intended for no one to be benefited from his act.

The innate revulsion against allowing evil to be rewarded, against allowing the evil to profit at the expense of his victim is hoary with the dignity of ancient respect, and has found its voice in codes of mankind throughout the span, sounding often in tones of public policy as noted above. With the soundness of such principle, this Court can have no argument, but here its invocation is not discernible, for the enrichment of the insured's estate could scarcely have had relationship or motivation of the act. The wife's estate is denied nothing, which could not have been taken away by a mere change of beneficiary at the whim of the husband. Hers was a mere contingency, which did not in fact ripen into anything more. Any attempt to project into this clearly established legal framework concepts of morality in the guise of public policy does violence to established law, which, with its imperfections, must nonetheless be applied as it is and not on the predelictions of the Court. Where there is absence of legislation, where there is a void of distinct guideposts, judicial rectification of wrong under the doctrine of public policy has its place. Were this the situation here, however, even so it is deemed more appropriate to recall the more charitable language of other Biblical contexts:

"In those days they shall say no more. The fathers have eaten a sour grape, and the children's teeth are set on edge.

"But every one shall die for his own iniquity: every man that eateth the sour grape, his teeth shall be set on edge." Jeremiah 31: 29 and 30

"Yet say ye, Why? Doth not the son bear the iniquity of the father? When the son hath done that which is lawful and right, and hath kept all my statutes, and hath done them, he shall surely live.

"The soul that sinneth, it shall die. The son shall not bear the iniquity of

the father, neither shall the father bear the iniquity of the son: the righteousness of the righteous shall be upon him, and the wickedness of the wicked shall be upon him." Ezekial 18: 19 and 20.

Appropriate order is entered in conformity herewith.