WILLIAM BRUCE GARDNER, ADMINISTRATOR OF THE ESTATE OF CAROL GARDNER BATTON, DECEASED v. NATIONWIDE LIFE INSURANCE COMPANY

No. 748SC380

(Filed 17 July 1974)

**Descent and Distribution § 6; Insurance § 30— murder of insurance beneficiary — suicide of insured — payment of proceeds to slayer's mother**

Where a life insurance policy designated the insured's wife as beneficiary and also designated classes of alternative beneficiaries, and the insured feloniously killed his wife and then committed suicide,

the designation of alternative beneficiaries by classes complied with the requirement of G.S. 31A-11(b) that "some person" be named as alternate beneficiary in order to avoid payment of the insurance proceeds to the estate of the decedent-beneficiary, and the payment of the proceeds to the slayer-insured's mother pursuant to the provisions of the policy did not contravene the principle codified in G.S. Ch. 31A barring the slayer from profiting from his own wrong.

APPEAL by defendant from *Lanier, Judge,* 14 January 1974 Session of Superior Court held in LENOIR County. Heard in the Court of Appeals on 22 April 1974.

This is a civil action wherein the plaintiff, William Bruce Gardner, administrator of the estate of Carol Gardner Batton, seeks to recover $20,000 in life insurance proceeds from defendant, Nationwide Life Insurance Company. The sum plaintiff seeks to recover represents proceeds allegedly wrongfully paid by defendant to Lossie S. Batton, mother of the deceased insured (William Ennis Batton).

The uncontroverted facts of this case are as follows:

On 12 September 1971, William Ennis Batton shot and killed his wife, Carol Gardner Batton, and then committed suicide. William Batton was insured for benefits by defendant under a group insurance policy in the amount of $20,000. Carol Batton was named as the beneficiary of the policy and the parties agree that the insurance policy premiums were paid and the policy was in full force and effect on the date of death of the insured.

Defendant, after having been notified that Mr. Batton killed his wife and then himself, paid $20,000 to the mother of the insured. Such payment was made pursuant to a provision contained within the policy which provided that: "If there is not a designated Beneficiary surviving at the death of the Employee, payment will be made in a single sum at the option of the Company, to anyone or more of the first surviving class of the following classes of successive preference beneficiaries: the Employee's (1) spouse, (2) surviving children, (3) surviving parents, (4) surviving brothers and sisters, and (5) executors or administrators."

Subsequent to the payment of the sum of $20,000 to the mother of the deceased-insured, the plaintiff instituted the present action. The plaintiff bottomed his complaint upon the allegation that such payment was in violation of Chapter 31-A

---

Gardner v. Insurance Co.

---

of the North Carolina General Statutes in that this payment allowed the slayer to profit from his own wrongdoing.

Further evidence disclosed that the defendant was aware of the circumstances surrounding the deaths of Carol Gardner and William Gardner prior to making the payment of the proceeds to William Gardner's mother.

Both parties moved for summary judgment and the trial judge, after reviewing the pleadings, memoranda of law, and interrogatories, entered summary judgment in favor of plaintiff. In so doing, the trial court made the following pertinent conclusions of law:

"4. That the defendant had ample notice of circumstances bringing payment of the insurance benefits within the provisions of Chapter 31A of the General Statutes of North Carolina.

5. That such action was contrary to the provisions of Chapter 31A of the General Statutes of North Carolina and the law of North Carolina.

6. That Chapter 31A of the General Statutes of North Carolina and *Parker v. Potter, supra,* preclude payment of life insurance benefits to the mother of the deceased, insured William Ennis Batton, after notice of the circumstances bringing it within provisions of Chapter 31A.

7. That to allow the insured's mother to receive the benefits of life insurance policy of the defendant would be directly in conflict with those rules set out in *Parker v. Potter,* 200 N.C. 348, 157 S.E. 68 (1931), since to do so would allow someone claiming through the insured to benefit from his wrongful act and would therefore be contrary to public policy."

Defendant appealed from summary judgment for plaintiff.

*Owens & Haigwood by Thomas D. Haigwood and James, Hite, Cavendish & Blount by Marvin K. Blount, Jr., for plaintiff appellee.*

*Jeffress, Hodges, Morris & Rochelle by A. H. Jeffress for defendant appellant.*

HEDRICK, Judge.

This appeal presents but one question for our consideration: Who is entitled to the proceeds of a life insurance policy when the insured feloniously kills the named beneficiary, then commits suicide, and the insurance policy contains a section designating classes of alternative beneficiaries who are to receive the proceeds when the named beneficiary(ies) does not survive the insured? Determination of this issue is governed by G.S. 31A-11(b) which reads as follows: "If the decedent is beneficiary or assignee of any policy or certificate of insurance on the life of the slayer, the proceeds shall be paid to the estate of the decedent upon the death of the slayer, *unless the policy names some person other than the slayer or his estate as alternative beneficiary.*" (emphasis added.)

Plaintiff, notwithstanding the fact that alternative beneficiaries were enumerated in the insurance policy, contends that the proceeds should be paid to the estate of the decedent-beneficiary because the alternative beneficiaries enumerated in the insurance policy are designated by classes by the express language of the policy, and as such do not comply with G.S. 31A-11(b)'s requirement that the alternative beneficiary must be some "person". Furthermore, the plaintiff attacks the payment of the proceeds to the slayer's mother as being contrary to the avowed policy of G.S. 31A, to wit: "that no person shall be allowed to profit by his own wrong."

Conversely, defendant asserts that plaintiff's interpretation of G.S. 31A is much too narrow and that it is unable to discern how the policy advocated by Chapter 31A will be undermined by awarding the proceeds to the mother of the slayer.

Our research discloses that since the enactment of G.S. 31A in 1961, no cases have been decided under the specific provision now before us. Both plaintiff and defendant found their arguments upon the decision of *Parker v. Potter*, 200 N.C. 348, 157 S.E. 68 (1931). Although *Parker* was decided thirty years prior to the enactment of G.S. 31A, we nevertheless believe it to be important to the determination of the question now before us.

In *Parker*, just as in the present case, the husband slew his wife and then committed suicide; however, *Parker* differs factually from the present case in that two insurance policies were involved. The opinion of the court in *Parker*, although not specifically so designated, consists of two separate determinations—one for each policy involved. The first policy concerns

the husband as the insured and the wife as the beneficiary. The administrator of the slayer-husband's estate claimed that the heirs of the slayer were entitled to the proceeds of the policy as the beneficiary did not survive the insured and no alternative beneficiary was named. The Supreme Court balked at this logic and determined that the proceeds were to be paid to the next of kin of the wife, because to hold otherwise would be to do harm to the maxim that no man should take advantage of his own wrong. Plaintiffs in the instant case point to this part of the *Parker* decision for support of their contention that the award of the proceeds by defendant to the slayer's mother was improper.

The second policy involved in *Parker* also named the slayer's wife as the beneficiary and then contained the following pertinent sections:

"Section 4. Applications—Applications must be made on forms prescribed by the Sovereign Commander, stating the amount desired and naming the beneficiary and relationship to applicant, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers and sisters, or other blood relations, or persons dependent upon the member. If the beneficiary named is not one of said class of persons, the certificate shall be null and void.

"Section 5. Beneficiaries—The beneficiary or beneficiaries shall be designated in every beneficiary certificate issued and shall be only of the class named above. In the event of the death of all the beneficiaries designated before the death of the member, if no new designation has been made, the benefits shall be paid to the surviving widow and surviving children of the member, share and share alike, provided such widow shall not be entitled to any benefits if she shall have been divorced; *provided further,* that if there be no surviving widow, the surviving children, if any, shall be entitled to all of such benefits, and if there be no surviving children, then the surviving widow, if any, shall be entitled to the benefits; but if there be no surviving wife or children, such benefits shall be paid to the next living relation of the member in the order named in class of beneficiaries named in paragraph 4 above, and those of the half blood shall share equally with those of the full blood."

The named beneficiary not surviving the insured, the court decided that the above quoted sections of the insurance policy

Gardner v. Insurance Co.

controlled; and on this basis, the mother of the slayer was awarded the proceeds. In so doing the court stated, "If it be granted that Rebecca J. Groves [mother of the slayer] is in the class named in section four by reason of privity in blood with the insured, it does not follow that her status as beneficiary is not definitely fixed by the terms of the contract. Indeed, her interest is derived from the contract and is not affected by any asserted analogy between a devise and a contract of insurance." *Parker v. Potter, supra,* at p. 355. Defendant asserts that this portion of the *Parker* opinion is the part which is critical to the instant case.

Although again recognizing the fact that *Parker* was decided three decades prior to the enactment of G.S. 31A, still we are inclined to agree with the defendant that the court's decision as to the second insurance policy should serve as a guideline to our determination of the case *sub judice.* Clearly, by its action in awarding the proceeds of the second policy to the mother of the slayer, the Supreme Court in *Parker* manifested its belief that the payment of the proceeds to the mother of the slayer pursuant to the pertinent sections of the insurance policy would not frustrate the principle that one should not benefit by his own wrongdoing.

Similarly, we believe that allowing the slayer's mother in the instant case to receive the insurance proceeds pursuant to the applicable sections of the policy will not do violence to the legislature's codification in G.S. 31A of the general principle barring a wrongdoer from unjustly enriching himself by his wrongful act. The legislature specifically included in G.S. 31A-11(b) a proviso to deal with alternative beneficiaries, and we are of the view that the term "some person" contained within the proviso should not be narrowly construed as contended by plaintiff. The public policy sought to be fostered by the enactment of G.S. 31A is predicated upon the theory that the murderer *himself* will not profit by his own wrongdoing, however, this principle does not extend to those related to the slayer, when, as here, they are named in the insurance contract as alternative beneficiaries.

For the reasons stated, the judgment appealed from is

Reversed.

Judges BRITT and CARSON concur.