SHIVERS, Judge.
This appeal is from a final judgment awarding the proceeds of a life insurance policy jointly to the estates of the decedent’s wife and stepchildren. We reverse.
Charles Chatman, Sr., was married to Sheila Currie Chatman. Chatman’s wife had two children from a previous marriage, Michael Christopher Hurst and Bridgett Hurst, ages 14 and 11. Chatman had a son from a previous marriage, the appellant Charles David Chatman, Jr. Chatman lived with his wife and stepchildren; his son, the appellant, lived elsewhere.
Chatman and his wife both worked for the Department of Corrections. Shortly before their marriage, and in the presence of a coworker, Chatman and his soon-to-be wife orally agreed to mutually designate each other as primary beneficiaries on their group life insurance policies. They did so. Chatman designated his son as the contingent beneficiary, but his wife did not designate a contingent beneficiary. Chatman’s policy provided that he “may from time to time change his beneficiary without notice to or consent of the beneficiary....”
On August 14, 1990, Chatman and his wife and stepchildren were found dead in their home. An investigation concluded that Chatman shot his wife and stepchildren in their sleep and then shot himself.
W.M. Currie and Carolyn Currie, the wife’s parents, were appointed personal representatives of the estate of the wife. Gordon Hurst, the natural father of Michael Christopher Hurst and Bridgett A. Hurst, was appointed personal representative of their estates. These personal representatives filed a complaint against Chat-man’s son, the appellant, and Gulf Life Insurance Company, which was the insurer for Chatman’s life insurance policy. The estates sought a declaratory judgment adjudicating the parties’ rights with respect to Chatman’s life insurance policy. The estates’ position was that either Chatman breached his oral contract with his wife by killing her, or Chatman cannot indirectly benefit from his wrongdoings by his son’s receipt of the life insurance proceeds. Gulf Life cross-claimed for interpleader and was *456 dismissed as a defendant after depositing the proceeds of the life insurance policy in the Registry of the Court.
A non-jury trial was conducted on August 22, 1991. The trial court found there was a contract between Chatman and his wife to ‘cross-designate’ each other as beneficiaries, and Chatman violated the terms of the contract by murdering his wife. The trial court further found that according to section 732.802(4), Florida Statutes, the insurance proceeds should not be paid to Chatman’s son—the contingent beneficiary. Chatman’s son posted a su-persedeas bond and filed a notice of appeal.
Section 732.802, Florida Statutes (1991), states in part:
(3) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who unlawfully and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement; and it becomes payable as though the killer had predeceased the decedent.
(4) Any other acquisition of property or interest by the killer, including a life estate in homestead property, shall be treated in accordance with the principles of this section.
We hold as a matter of law that section 732.802 does not apply to an innocent contingent beneficiary’s entitlement to life insurance benefits resulting from the killing of the primary beneficiary by the insured who then commits suicide.
Subsection 732.802(3) applies to a “named beneficiary of a ... life insurance policy ... who unlawfully and intentionally kills ... the person upon whose life the policy is issued_” Subsection 732.802(3) does not divest Chatman’s son, as an innocent person, from his entitlement to benefits under the insurance policy on Chat-man’s life. Cf., In re Estate of Benson, 548 So.2d 775 (Fla. 2d DCA 1989) (section 732.802 did not prevent children of a man who killed his mother and brother from inheriting their father’s share under his mother’s will or their father's share of his brother’s intestate estate).
Subsection 732.802(4) states that “[a]ny other acquisition of [an] interest by the killer ... shall be treated in accordance with the principles of this section.” A principle of this section is that the interest at issue shall be acquired or become payable “as though the killer had predeceased the decedent.” In this case the ‘killer’ and ‘the person upon whose life the policy is issued’ are the same person. Since one cannot predecease one’s self, it seems apparent that the statute was not intended to apply to an insured’s suicide and the resultant entitlement of an innocent beneficiary.
Appellee argues that Chatman temporarily acquired an interest between the time of his wife’s death and Chatman’s death, and therefore subsection 732.802(4) is applicable. The asserted interest acquired by Chatman was the right to designate a new primary beneficiary. Chatman already had that right under the policy, and thus he did not acquire it by killing his wife.
Appellee argues in equity that one cannot benefit from his own crime. However, the general rule that a person cannot be permitted to profit from a wrongful act is inapplicable where the wrongdoer stands to gain nothing by his act, as where he kills himself soon after committing the wrongful act. 31 C.J.S. Estoppel § 75, n. 56.5 (Supp.1992); see also, Union Central Life Ins. Co. v. Elizabeth Trust Co., 18 Backes 505, 119 N.J.Eq. 505, 183 A. 181 (N.J.Ch. 1936) (when the reason for the application of the rule does not exist the rule cannot be invoked); In re Estate of Bobula, 51 Misc.2d 376, 273 N.Y.S.2d 165 (N.Y.Surr.Ct.1966) (right of estate of insured to proceeds of group policy was not defeated by insured’s alleged murder of his beneficiary wife, followed by his suicide, on theory that no man shall profit by his crime, where insured had right at any time to change beneficiary under group policy and thereby terminate defeasible interest of beneficiary wife).
Finally, Appellee argues that Chat-man’s killing of his wife breached their *457 contract. As the trial court found, the contract was simply to cross-designate each other on their life insurance policies. Both parties fully performed under that contract, which thus became executed. Since a breach is the failure to perform the whole or part of a contract, one cannot breach a wholly executed contract.
In sum, we reverse the trial court’s failure to award the proceeds of Chatman’s life insurance policy to the appellant, Chat-man’s son — the contingent beneficiary. Section 732.802 is inapplicable under the facts of this case, and there was no breach of contract.
REVERSED.
KAHN, J., concurs.
ZEHMER, J., specially concurs with opinion.