Alice Coan and Theron Coan were married. They separated in December 1997. During a domestic dispute in January 1998, Theron killed Alice; approximately three hours later, Theron killed himself.
At the time of his death, Theron was an insured under a life insurance policy issued by Alfa Life Insurance Corporation. Alfa issued the policy to Theron, as owner, in 1986.[1] The policy had a death benefit of $25,000. The primary beneficiary of the policy, provided she survived Theron, was Alice.[2]
Greg Coan, who is the son of Theron, but not of Alice, was designated in the policy as the party to receive the proceeds of the policy in the event Alice predeceased Theron.
In February 1998, Greg filed a claim form with Alfa demanding payment of the death benefit for the policy on Theron's life. Alfa paid the death benefit, plus accrued interest, to Greg. There is no allegation or evidence indicating that Greg was involved in the death of Alice or in the death of Theron.
In December 1999, Ralph Bonner, as administrator of the estate of Alice, filed a complaint against Alfa in the Marshall Circuit Court. (Bonner is the son of Alice, but not of Theron.) The complaint was subsequently amended. In the complaint, as amended, Bonner alleged that Alabama's "Slayer's Statute," § 43-8-253, Ala. Code 1975, operated to entitle Alice's estate to the death benefit under the insurance policy on Theron's life. The amended complaint alleged that Alfa therefore had breached the terms of the alleged "insurance contract" with Alice by not paying the death benefit to her estate.[3] Bonner also *Page 364 
alleged that Alice was an owner of the policy on Theron's life "by virtue of the fact that she paid the premiums, in whole or in part, on [the] policy" and that Theron was the "beneficiary" of the policy on his life because "he had the right to borrow against the cash value of the policy" as well as "other options and rights."[4] Bonner requested that the circuit court award damages against Alfa based on the theories of breach of contract; negligent, wanton, or wilful payment in violation of the terms of the policy and applicable law; and bad-faith refusal to pay the death benefit to Alice's estate.
In November 2003, Alfa filed a motion for a summary judgment. In the motion, Alfa argued that the Slayer's Statute was inapplicable, that it had payed the death benefit to Greg as required by its insurance contract, and that it was entitled to a summary judgment as to all of Bonner's claims.
In March 2004, the circuit court granted Alfa's motion for a summary judgment as to all of Bonner's claims except his breach-of-contract claim. Thereafter, Bonner filed a motion requesting that the circuit court reconsider its ruling as to the partial summary judgment in favor of Alfa, and he filed a motion requesting that the circuit court enter a summary judgment in his favor as to the breach-of-contract claim.
In June 2004, after concluding that no genuine issue of material fact existed, which the parties do not dispute, the circuit court entered an order denying Bonner's motion to reconsider its ruling as to the partial summary judgment in favor of Alfa, but granting Bonner's motion for a summary judgment as to Alfa's alleged breach of contract. In part, the order states:
 "Under the facts of this case, Alabama's Slayer Statute, § 43-8-253, [Ala. Code 1975,] applies. This Court finds that the wording of the statute, as written, covers the facts of this rare situation due to the fact that Alice Coan had an ownership interest in [the policy on Theron's life] and/or was an insured by virtue of the application itself and the simultaneous purchase of [the policy on Alice's life and the policy on Theron's life]. However, even if the wording of the Slayer Statute must be strained to apply in this case, the principal behind it is clear: a killer should not be allowed to benefit from his own wrongdoing. The Official Commentary to the Slayer Statute, passed in 1982, notes that this statute is intended to be a codification of, not in derogation of, the long-standing common law rule. . . . As such, this Court should give a broad application to the terms of the statute to effectuate its purpose. . . . And finally, should the statute itself be determined not to apply to the precise situation presented by this case, then the common law principle applies to this case, with the effect that Theron Coan must be considered to have predeceased Alice Coan."
Alfa appeals. Bonner cross-appeals.
Based on the undisputed facts and the arguments that have been presented on appeal, this court's standard of review is de novo; no presumption of correctness inures in favor of the circuit court's judgment. Ex parte Graham, 702 So.2d 1215 *Page 365 
(Ala. 1997); Roberts Health Care, Inc. v. State Health Planning Dev. Agency, 698 So.2d 106 (Ala. 1997).
The Slayer's Statute, Ala. Code 1975, § 43-8-253, which was enacted by our Legislature in 1982, and which essentially adopted § 2-803 of the Uniform Probate Code, states, in part:
 "(a) A surviving spouse, heir or devisee who feloniously and intentionally kills the decedent is not entitled to any benefits under the will or under articles 3 through 10 of this chapter, and the estate of the decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.
". . . .
 "(c) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.
 "(d) Any other acquisition of property or interest by the killer shall be treated in accordance with the principles of this section."
See generally Weaver v. Hollis, 247 Ala. 57, 59, 22 So.2d 525,527 (1945) ("A reasonable interpretation of [the statute providing for a husband to inherit property from his deceased wife], in the light of the common-law principle that no person can take advantage of his own wrong; that the law permits no one to profit by his own crime, precludes a felonious killer from taking from his murdered spouse."); Protective Life Ins. Co. v.Linson, 245 Ala. 493, 17 So.2d 761 (1944) (discussing the application of the common-law principle where the beneficiary feloniously killed the insured).
In DeKalb County LP Gas Co. v. Suburban Gas, Inc.,729 So.2d 270, 275-76 (Ala. 1998), our Supreme Court explained the process of statutory construction:
 "In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'
 "Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)). . . . It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997)."
(Emphasis added.)
After carefully considering the language of the Slayer's Statute, we conclude that the circuit court erred by applying it to the present case. First, subsection (a) of the *Page 366 
Slayer's Statute prevents the party who intentionally kills a decedent from receiving "any benefits under the will or under articles 3 through 10 of" the Probate Code, that is, from "the estate of the decedent." In this case, the benefits payable under the insurance policy were received by Greg, not by Theron, the killer. The recovery by Greg of benefits under the insurance policy will not result in Theron receiving any benefit from the estate of the decedent, Alice.
Secondly, subsection (c) of the statute only prevents recovery of insurance proceeds by a named beneficiary of the policy who kills the principal obligee or the person on whose life the policy is issued. Again, Greg is the party who received the proceeds payable under the policy at issue. Greg did not kill anyone.
Finally, subsection (d) of the statute addresses "other acquisition[s] of property or interest by the killer." Again, Theron acquired no property or interest as a result of his killing Alice.[5]
The parties have cited no Alabama precedent applying the principle that a person cannot benefit from his own wrong to facts such as those presented in the present case. Cases from other jurisdictions, however, support our conclusion that Alabama's Slayer's Statute is not applicable here. See, e.g.,Belt v. Baser, 238 Ark. 644, 383 S.W.2d 657 (1964); Chatman v.Currie, 606 So.2d 454, 456 (Fla.Dist.Ct.App. 1992) (applying a Florida statute that is identical to Alabama's Slayer's Statute and concluding that "the general rule that a person cannot be permitted to profit from a wrongful act is inapplicable where the wrongdoer stands to gain nothing by his act, as where he kills himself soon after committing the wrongful act"); Union Cent.Life Ins. Co. v. Elizabeth Trust Co., 119 N.J.Eq. 505, 513,183 A. 181, 185 (N.J.Ch. 1936) ("[T]he insured did not gain by his wrongful act. Until he died the policies were not payable and the rights of his administrators came into being only on his death without relation to the death of the beneficiary. No benefit inured to him by the taking of the life of the beneficiary because he had a right under the terms of the policy to change the beneficiary at will. To say that the object of the murder was to accomplish what could be accomplished by the mere scratch of a pen carries its own refutation and leads to the conclusion that profit via the policy was not the object of the crime. The reason for the application of the rule failing, the rule cannot be invoked."); Gardner v. Nationwide Life Ins. Co.,22 N.C.App. 404, 409, 206 S.E.2d 818, 821 (1974) (holding, in the context of a statute worded differently than Alabama's Slayer's Statute, that the principle that a "murderer himself will not profit by his own wrongdoing . . . does not extend to those related to the slayer, when, as here, they are named in the insurance contract as alternative beneficiaries"); see also In re Pinnock'sEstate, 83 Misc.2d 233, 371 N.Y.S.2d 797 (N.Y.Sur.Ct. 1975);cf. Longenberger v. Prudential Ins. Co. of America,121 Pa.Super. 225, 228, 183 A. 422, 424 *Page 367 
(1936) (Stating, in the context of an insurer's argument that the insured's killing of a beneficiary voided the insurance policy: "`To conclude that the insured killed his wife in order to do what he could have accomplished by notifying the company of his desire to change the beneficiary is too absurd to require any discussion. And a denial of liability on the ground of public policy, based on such a premise, as respects a contract of insurance on his own life, is carrying the doctrine far beyond its limits as recognized in this state. The killing of the wife initiated no claim whatever upon the policy on the husband's life; it was his suicide which made the policy payable.'" (quoting Allegheny Trust Co. v. State Life Ins. Co.,110 Pa.Super. 37, 44, 167 A. 251, 253 (1933)).[6]
Based on the foregoing, we conclude that the circuit court erred when it entered the summary judgment in favor of Bonner and against Alfa as to Bonner's breach-of-contract claim but that it did not err when it entered the summary judgment in favor of Alfa and against Bonner as to Bonner's other claims. Accordingly, we remand this cause to the circuit court for the entry of a judgment consistent with this opinion.
APPEAL — REVERSED AND REMANDED.
CROSS-APPEAL — AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] The 1986 policy "replaced" two life insurance policies on the life of Theron that were issued to Alice, as owner, in 1982 and 1984, respectively. The insurance application forms for the 1982, 1984, and 1986 policies each contain a separate section to be completed if the owner of the policy is not the proposed insured. Although the owner-other-than-proposed-insured section of the policy application was completed in the name of Alice, as owner, for the 1982 policy and the 1984 policy, the section is blank in the 1986 policy application. Thus, as the 1986 policy itself reflects, the 1986 policy was issued to Theron, as owner. Likewise, although both Theron and Alice executed the 1982 and 1984 policy applications, as proposed insured and owner, respectively, only Theron executed the application for the 1986 policy.
[2] At the time of Alice's death, she was also the owner of and the insured under a life insurance policy issued by Alfa in 1986. The policy on Alice's life was issued at approximately the same time as the policy on Theron's life, and it also had a death benefit of $25,000. Initially, Theron was the primary beneficiary of the policy on Alice's life. However, Alice changed the beneficiary designation on her policy when the parties separated in December 1997. The death benefit from the policy on Alice's life was paid to Alice's estate.
[3] Bonner alleged, and argues, that the insurance policy at issue and the insurance policy on Alice's life, see note 2,supra, must be construed as "one set" and, thus, as one contract. The provisions of neither insurance policy supports Bonner's argument, and he has cited no legal authority to support his argument.
[4] It is undisputed that in conjunction with their insurance policy applications Theron and Alice authorized the payment of the premiums for their respective life insurance policies from their joint checking account and that the premiums were in fact paid from their joint checking account.
[5] Even if the receipt of property by Theron's estate could be deemed a benefit to Theron (a proposition that we are not called upon to, and that we do not, adopt), Greg received the property (i.e., the insurance policy proceeds) in his capacity not as an heir of Theron's estate, but in his capacity as a designated beneficiary under an insurance policy with a third party. Indeed, if passage of property to Theron's estate were deemed to constitute an "acquisition of property or interest" by Theron, or a "benefit" to him, Alice likewise would not be entitled to receive those benefits as an heir of Theron's estate. Nor could she receive those benefits in her capacity as a named beneficiary under the insurance policy due to the fact that a condition for her recovery of those benefits, her survival of Theron, was not satisfied.
[6] Even if the Slayer's Statute were somehow deemed applicable to the present case so as to prevent Greg from receiving the insurance proceeds at issue, this fact would not entitle Alice to receive those benefits. Any right to recovery under the insurance policy that Alice might have would be a function of that insurance policy, itself. The policy expressly conditions her receipt of benefits on her surviving Theron, a condition that was not met.