CHASE *v.* JENIFER, Administratrix

[No. 212, September Term, 1958.]

*Decided April 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Marvin Braiterman,* with whom was *Sheldon H. Braiterman* on the brief, for the appellant.

*William O. Goldstein* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The question presented in this appeal is whether a wife, named as the beneficiary of a $3,000 group life insurance policy upon the life of her husband, is disqualified from recovering the proceeds by reason of the fact that she killed her husband, was tried on a charge of murder, and was found not guilty of murder, but guilty of manslaughter. The case arises upon an interpleader filed in the equity court by the insurer, against the wife and the decedent's daughter, who had been appointed administratrix of the husband's estate. By stipulation, the parties agreed that the oral opinion and verdict of Judge Tucker, sitting without a jury in the criminal case, "be * * * adopted as the entire statement of

facts in connection with the trial of issues in the * * * case of interpleader."

The facts, as found by Judge Tucker, may be briefly stated. The couple occupied an apartment, for which the husband paid rent. She received support from him and from no other source. It was his habit to drink heavily over the week ends, and he appeared to have been of a rather violent disposition when drinking. On several occasions over the preceding two years he had chased his wife out of the apartment with a "rather dangerous looking weapon," but there were many occasions when he stayed at the apartment over week ends, invariably got drunk, but did not threaten his wife. On the particular occasion, there was no evidence that he had any weapon in hand. He did, however, slap his wife and make threatening gestures with his fists. He followed her into the bedroom, where she picked up a knife, which had a "very sharp and thin blade * * * apparently caused by honing." The depth of the stab-wound which caused his death was 3½ inches. Judge Tucker did not believe her story that she held the knife stationary and he lunged into it, but found that she stabbed him with "some force." He found that she was not required to resort to a killing in order to protect herself, and that the stabbing was not accidental. On the other hand, he found that the defendant's acts were not malicious, but that she used excessive means to do what she thought was necessary for her protection. "Under the circumstances she was probably justified in picking up the knife in order to scare the deceased." The deceased had no weapon. "All he had done was to slap the defendant, and, according to the evidence, he had done that a lot of times. * * * there was no reason for her to believe this time that it was necessary for her to mortally wound the man in order to protect herself from death or serious bodily injury."

In *Price v. Hitaffer*, 164 Md. 505, a husband shot and killed his wife several months after she had obtained a divorce *a mensa*, and immediately thereafter committed suicide. There was evidence that he had threatened to kill her. Although obviously there could be no criminal trial, the Orphans' Court held that his heirs and personal representatives

could not share in her estate, and this was affirmed on appeal. This Court seems to have assumed that the killing was murder, although there was no discussion of the point, nor was there any express finding as to the nature of the crime in the court below. The decision was rested upon the maxim that one cannot profit by his own wrong, and on a broad ground of the public policy of the common law. Contentions that the holding violated constitutional provisions against corruption of blood or forfeiture of estate (Art. 27, Maryland Declaration of Rights) were found to be without merit. The Court dealt with the case as one of first impression, and recognizing that the cases in other jurisdictions were not in accord, adopted the view that the statutes of descent and distribution must be read in the light of the common law maxim above mentioned. Perhaps a majority of the courts dealing with this question had held to the contrary. See Wade, *Acquisition of Property by Wilfully Killing Another—A Statutory Solution,* 49 Harv. L. Rev. 715. The author pointed out that in nearly all states where this was held, legislation had been adopted to spell out the exception, and strongly advocated a uniform act. See also Pound, *Spurious Interpretation,* 7 Colum. L. Rev. 379, 382, suggesting that the view adopted by those courts reaching the result by interpretation was untenable. Nevertheless, we regard the decision of the Maryland Court as settled law.

In the analogous situation where a claim is made by the beneficiary of a policy upon the life of the victim, the courts have had less difficulty in reaching the result that the killer is disqualified. Indeed, the decisions appear to be uniform on the point. See Wade, *supra,* and *N. Y. Mut. Life Ins. Co. v. Armstrong,* 117 U. S. 591, cited with approval in the *Price* case, *supra.* See also Grossman, *Liability and Rights of the Insurer When the Death of the Insured is Caused by the Beneficiary or by an Assignee,* 10 B. U. L. Rev. 281. The reasoning is not always clear, but it has been variously suggested that the parties contract in the light of common law principles, and that the risks insured against do not include intentional acts designed to effect the death of the insured, whether the killing is motivated by the desire to benefit or

not. Wade, *supra,* makes the point that the wrong, from which the beneficiary may not benefit, contemplates an intentional wrong. Cf. 70 A. L. R. 1539; 91 A. L. R. 1486. This line of cases was referred to with approval in the *Price* case, *supra.* The English cases, also cited in the *Price* case, *supra,* seem to hold that even an unintentional killing, if felonious, may operate as a bar. *Hall, etc. v. Knight and Baxter,* [1914] Prob. 1; *Lundy v. Lundy,* 24 Can. Sup. Ct. Rep. 650. See also *Cleaver v. Mutual Reserve Fund Life Association,* [1892] 1 Q. B. 147.

The appellant does not challenge the principles stated, but contends that a line should be drawn between murder and manslaughter. She relies heavily on Restatement, *Restitution,* §§ 187 and 189. These sections state that a murderer may not inherit, or take as the beneficiary of a life policy, but in § 187, *Comment* e, it is said that the rule is not applicable where the slayer is guilty of manslaughter. It is noted, however, that, in some states, statutes have been interpreted to apply to all cases of unlawfully or feloniously causing the death of another, including manslaughter as well as murder, citing Wade, *supra.* The cases, however, generally hold that the line should be drawn, not between murder and manslaughter, but between voluntary and involuntary manslaughter. We shall not attempt to review them all but see Vance, *Insurance* (3d ed.), § 117, p. 718; *Hull v. Metropolitan Life Insurance Company,* 26 Pa. Dist. 197; *Schreiner v. High Court of I. C. O. of F.,* 35 Ill. App. 576; *Minasian v. Aetna Life Ins. Co.,* 3 N. E. 2d 17, 19 (Mass.); *Greer v. Franklin Life Ins. Co.,* 221 S. W. 2d 857 (Tex.); *Metropolitan Life Ins. Co. v. McDavid,* 39 F. Supp. 228; cf. *Insurance Co. v. Prostic,* 169 Md. 535, 538.

In *United States v. Burns,* 103 F. Supp. 690 (Md. D. C.), a wife was denied recovery as a beneficiary despite the fact that she had been acquitted by a Maryland jury on a charge of murder and manslaughter, on the ground of self-defense. It was pointed out that the court in the civil proceeding was not bound by the decision in the criminal case, where the test of reasonable doubt was applicable, even though the case was presented upon the record in the criminal case. The holding

was affirmed on appeal, on the ground that the trial court properly found from the evidence that the wife was guilty of the intentional and felonious slaying of the insured. *Burns v. United States,* 200 F. 2d 106 (C. A. 4th Cir.). The case is particularly in point, because the Court applied the Maryland law.

It is well settled that manslaughter, under the Maryland law, is a felony, and distinguished from murder by the presence or absence of malice aforethought. *Stansbury v. State,* 218 Md. 255, 260; *Bruce v. State,* 218 Md. 87, 98; *Faulcon v. State,* 211 Md. 249; *Chisley v. State,* 202 Md. 87, 94; Hochheimer, *Criminal Law* (1904), § 346. Manslaughter may, however, be voluntary or involuntary, depending upon the requisite intent. *Neusbaum v. State,* 156 Md. 149, 155. Cf. *State of Maryland v. Chapman,* 101 F. Supp. 335, 340, and *Insurance Co. v. Prostic, supra* (p. 540). See also 1 Warren, *Homicide* (perm. ed.), § 83; Clark & Marshall, *Crimes* (5th ed.), §§ 255, 256, 258; and *United States v. Burns, supra.* The use of a deadly weapon directed at a vital part of the body may be evidence, among other facts, of a specific intent to take life. *Davis v. State,* 204 Md. 44, 52. It may also permit an inference of malice. *Bruce v. State, supra* (p. 96). An unintentional killing may be manslaughter, if due to a wanton and reckless disregard of human life. *Allison v. State,* 203 Md. 1, 5; *Johnson v. State,* 213 Md. 527, 531.

The appellant contends that, according to the weight of authority, an unintentional killing, even though unlawful and felonious, is not a bar to recovery. Cf. Vance, *supra.* We do not reach that question, for we think it clear that the killing in the instant case was intentional. For present purposes we may assume that malice aforethought was not shown. Nevertheless, the Chancellor specifically found on the facts that the stabbing was intentional. It is true that Judge Tucker did not designate the crime of which he found her guilty as voluntary manslaughter, but simply as manslaughter. Even if he had acquitted her, the holding would probably have not been conclusive on the Chancellor, but in any event, the stipulated facts stated in Judge Tucker's opinion clearly sup-

port a finding that the stabbing was intentional. Judge Tucker found that it was not accidental or in self-defense, and that the means used to repel violence were excessive. There is no room for a contention that the stabbing was merely negligent and unintended. Where the killing is both felonious and intentional, we think the beneficiary cannot prevail and the order of the Chancellor directing the payment of the proceeds of the policy to the administratrix must be affirmed.

*Order affirmed, with costs.*