573 A.2d 34

S. Donald SHERMAN et ux.

v.

Audrey Gail ROBINSON and Samuel J. Harbold, Personal Representatives of the Estates of Stevenson Thomas Sherman et ux.

No. 98 Sept. Term, 1989.

Court of Appeals of Maryland.

May 8, 1990.

**446**

Karen L. Jones (Lester V. Jones, P.A., both on brief), Bel Air, for appellants.

Roy T. Englert, Washington, D.C. (Harold I. Glaser, Stuart J. Robinson, Baltimore, on brief), for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and HOWARD S. CHASANOW,* Judge, Specially Assigned.

HOWARD S. CHASANOW, Judge, Specially Assigned.

On October 12, 1987, Ann Gibson Sherman and her husband Stevenson Sherman, were murdered in their sleep. Timothy Sherman (Timothy), Ann Sherman's natural son and Stevenson Sherman's adopted son, was charged with

---

\* Howard S. Chasanow, a judge of the Seventh Judicial Circuit, was specially assigned to the Court of Appeals at the time the case was argued. He was sworn in as a judge of the Court on 17 January 1990.

first degree murder for the double shotgun slaying of his parents.

Timothy was convicted in the Circuit Court for Harford County of both murders on June 7, 1988. He was sentenced to two consecutive life terms and is currently serving those sentences. In an unreported opinion, the Court of Special Appeals affirmed the convictions.[1]

On October 22, 1987, ten days after the murders, Samuel Harbold and Gail Gibson Robinson were appointed co-personal representatives in the administrative probate of the Sherman estates—distribution of which was provided for in two wills. Both wills contained a simultaneous death clause which stipulated that in the event that Stevenson and Ann died together, or if circumstances made it impossible to determine who died first, Ann would be deemed the survivor and her estate would pass to their son, Timothy. If, for any reason, Timothy was unable to take under the wills, the estate would pass by intestate succession to Ann's parents, William and Erma Gibson (the Gibsons).

Shortly after the murders, when Timothy was arrested, the decedents' families had opposing views concerning Timothy's innocence. Stevenson's parents, Appellants Donald and Irene Sherman (the Shermans), although attempting to withhold judgment until the jury verdict, remained skeptical of Timothy's innocence. The Gibsons, on the other hand, consistently maintained that Timothy was innocent.

██ Because they believed in Timothy's innocence, the Gibsons had indicated that they intended to hold any assets they received from Stevenson's and Ann's estates to help Timothy, deeming this to be the decedents' wishes. After Timothy's conviction, the very possibility that the decedents' estate would even indirectly pass to the decedents' murderer greatly disturbed the Shermans. Thus, on No-

---

1. Timothy Sherman then petitioned this Court. His petition was denied October 10, 1989, as was his subsequent request for a reconsideration of the denial.

vember 1, 1988, they filed a caveat in the Orphans' Court for Harford County, and served the co-personal representatives of the estate, Appellees Samuel Harbold and Gail Gibson Robinson. Challenging the wills, the Shermans also sought a ruling from the Orphans' Court that the simultaneous death clauses in both wills were void.[2]

The Shermans maintained that, although Timothy could not take directly, if the estate passed to the Gibsons, they intended to hold the estate in trust for Timothy. Timothy would then indirectly benefit from his crime and the true intent of their son's will would not be achieved.

The co-personal representatives moved to dismiss the caveat petition on the grounds that the caveat was untimely filed under Maryland Code (1974), Estates and Trusts Article, § 5–207. The Orphans' Court granted the motion. The Shermans appealed to the Court of Special Appeals. We granted certiorari prior to a decision by that court.

We do not suggest that a Petition to Caveat Stevenson and Ann Gibson Sherman's wills was the appropriate action under the facts of this case. But since the Orphans' Court dismissed the Petition to Caveat because it was not timely filed, that is the only issue before us. It bears commenting that a more appropriate action might be for Appellants to petition the Orphans' Court with Exceptions to an Account that proposed distribution to a person who is precluded from taking.

Section 5-207 of the Estates and Trusts Article states in pertinent part:

(a) *Filing petition to caveat.*—Regardless of whether a petition for probate has been filed, a verified petition to caveat a will may be filed at any time prior to the

---

2. If the simultaneous death clauses are nullified by the caveat, Ann Sherman would no longer be deemed to be the surviving spouse. Stevenson Sherman's parents would share in his estate through intestate succession. This, in turn, would provide them with sufficient interest in the estate to have standing to Petition to Caveat the wills. *See Yingling v. Smith,* 254 Md. 366, 255 A.2d 64 (1969).

expiration of six months following the first appointment of a personal representative under a will, even if there be a subsequent judicial probate or appointment of a personal representative.

The co-personal representatives contend that the Shermans' petition should be dismissed because it was filed thirteen months after they were appointed, a full seven months after the limitation in § 5–207(a) of the Estates and Trusts Article had expired. We agree.

■ Section 5–207(a) clearly prohibits the filing of a caveat more than six months after the appointment of a personal representative. *Id.* Here, the co-personal representatives were appointed on October 22, 1987. The caveat was filed on November 1, 1988, thirteen months after the appointment, and seven months too late. Absent fraud, material mistake, or substantial irregularity in the appointment of the personal representative or the probate proceedings, the six-month time limit will be neither tolled nor extended. *Schlossberg v. Schlossberg,* 275 Md. 600, 619–25, 343 A.2d 234, 246–50 (1975); *see also, Durham v. Walters,* 59 Md.App. 1, 12, 474 A.2d 523, 529 (1984).

The Shermans do not allege, nor is there any evidence to suggest any fraud, material mistake, or substantial irregularity in the probate proceedings. Nevertheless, the Shermans offer three contentions why the limitations should be tolled. They argue first, that the circumstances of this case are so unusual that tolling is warranted; second, that because Timothy was presumed to be innocent until he was proven guilty, they had no standing to petition until Timothy was convicted; and finally, that filing a caveat petition before a conviction would have placed a great strain on family ties to their grandson and his maternal grandparents, thereby contravening public policy.

■ Eliminating the last contention first, we note that while it is true that various family relationships might suffer from the filing of this caveat, the time constraints in contesting a will cannot be relaxed to spare family feelings.

Although the tragic circumstances surrounding this case might have made the Shermans reluctant to file a caveat, that does not excuse the delay.

The Shermans' first and second contentions may be considered together. Many states have enacted "slayer" statutes that establish the principles applicable when a person kills another and may be tangibly enriched by the death. *See Ford v. Ford*, 307 Md. 105, 512 A.2d 389 (1986) (Appendixes A and B). Maryland has no such statute. This Court, however, has developed the equivalent of a "slayer's" statute through the common law. *Price v. Hitaffer*, 164 Md. 505, 165 A. 470 (1933); *Chase v. Jenifer*, 219 Md. 564, 150 A.2d 251 (1959); and *Schifanelli v. Wallace*, 271 Md. 177, 315 A.2d 513 (1974). This body of law has been referred to as the "slayer's" rule, *Ford* at 108, 512 A.2d at 390, and "it is the basic rule of this State that a murderer, or his heirs or representatives through him, ordinarily may not profit by taking any portion of the estate of the one murdered." *Id.* at 109, 512 A.2d at 391.

In *Hitaffer, supra,* the evidence established that a husband shot his wife and then immediately committed suicide. His suicide precluded a criminal trial. The Orphans' Court held that the husband's heirs and personal representatives could not share in the wife's estate. We affirmed on appeal.

We have since reiterated that a conviction of murder is not necessary to trigger the slayer's rule. *Ford* at 112, 512 A.2d at 392–93; *Jenifer* at 566–67, 150 A.2d at 253; *see also Hill v. Lewis*, 21 Md.App. 121, 125, 318 A.2d 850, 853 (1974). In *Ford* we stated that:

The disposition of a criminal cause is not conclusive of the character of the homicide or of the criminal agency of the putative killer in a civil proceeding concerning entitlement to assets of the decedent.

a) It is not dispositive that no criminal prosecution was brought against the alleged killer, or that charges against him were dismissed on constitutional, statutory or proce-

dural grounds or otherwise, or that, upon a criminal trial he was found not guilty for whatever reason, or was convicted of murder in the first or second degree or of manslaughter.

b) In the determination of who is entitled to the assets of the decedent, whether the alleged killer was the criminal agent and whether the homicide was intentional and felonious or unintentional is a function within the ambit of the civil proceeding. In short, the lack of or result of a criminal proceeding is not res judicata in a subsequent civil action.

*Ford* at 112, 512 A.2d at 392–93. The burden of proof concerning entitlement to assets of decedents is therefore the civil standard of "preponderance of the evidence," not the higher criminal standard of "beyond a reasonable doubt." *Id.*

██ Thus, although the circumstances of this case are unusual, they do not extend the time for filing a caveat. The caveators had notice of the probate proceeding and were obligated to exercise due diligence to inform themselves of the developments occurring in the proceeding. *Elliott v. Maryland Nat'l Bank*, 291 Md. 69, 77, 432 A.2d 473, 477–78 (1981). The issue of Timothy's potential guilt was known to the Shermans at the time Timothy was charged—shortly after the murders. Because they were required only to prove his guilt by a preponderance of the evidence, there was no basis for delaying the Petition to Caveat until guilt was established beyond a reasonable doubt.

We hold therefore that the Shermans were required to file their Petition to Caveat the wills of Ann and Stevenson Sherman in compliance with the six-month limitation in Estates and Trusts Article § 5-207(a). Hence, the trial judge did not err in granting the motion to dismiss because the Petition to Caveat was not timely filed.

JUDGMENT OF THE ORPHANS' COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.