745 A.2d 1098

**An DIEP and Vanessa Diep**

v.

**Hector RIVAS and CNA Insurance Company.**

**No. 64, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 14, 2000.

Patrick James Attridge (King & Attridge, on brief), Rockville, for petitioners.

Mark S. Carlin (Sherman, Meehan, Curtis & Ain, P.C., Washington, D.C.; Charles E. Wilson, Jr., Amy Leete Leone, McCarthy, Wilson & Ethridge, Rockville), all on brief, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

This interpleader action involves $150,000 in life insurance benefits payable as a result of the murder of a wife by her husband who then committed suicide. At issue is the ultimate recipient of the proceeds. After interpreting the insurance contract to provide for payment to relatives of the husband as contingent beneficiaries, the Court of Special Appeals, in *Diep v. Rivas*, 126 Md.App. 133, 727 A.2d 448 (1999), then applied

the slayer's rule to disqualify the contingent beneficiaries from receiving payment and awarded the proceeds to the wife's father. For the reasons set forth below, we reverse.

The murder and suicide took place during an argument at the marital home in Howard County on April 2, 1996. There were no children of the marriage. The murder victim, Maria Rivas, is survived by her father, the respondent, Dr. Hector Rivas, and the murderer/ suicide, Xuang Ky Tran (Tran), is survived by his brother and sister, the petitioners, An Diep and Vanessa Diep.[1] Tran was employed by IIT Research Institute (IIT) which was the holder of a group accidental death and dismemberment benefit policy (the Policy) issued by Continental Casualty Company (CNA) and effective January 1, 1990. Insofar as relevant to the instant matter, the Policy is comprised of the application for the master policy and the master policy. The record also contains the form certificate issued to IIT employees who were covered by the Policy. By its terms the certificate is not the Policy but "is merely evidence of insurance provided under the [P]olicy."

Following the death of Maria Rivas, CNA was confronted with conflicting claims for the benefits payable upon her death.[2] The petitioners and the respondent sought payment based on their respective interpretations of the "Payment of Claim" provision applicable, where, as here, no beneficiaries had been specially designated. That policy provision reads in relevant part:

"Benefits for loss of life of the Insured will be payable in accordance with the beneficiary designation in effect at the

---

1. Maria Rivas was also survived by her mother, but she was not named as a party in the interpleader action. Respondent's position is that both he and Mrs. Rivas are the beneficiaries.

2. The Policy pays 100% of the principal sum for loss of life which, with respect to Maria Rivas, is $150,000. There are certain exclusions from coverage for any loss, one of which is applicable to the death of Tran. These exclusions include "[s]uicide or a suicide attempt while sane or self-destruction or an attempt to self-destroy while insane" and "[s]ickness or disease, except pyogenic infections which occur through an accidental cut or wound."

time of payment. If no such designation is in effect at that time, the benefits shall be paid to the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives the Insured:

"The Insured's (a) spouse; (b) children, including legally adopted children; (c) parents; (d) brothers and sister[s]; or (e) estate.... If two or more persons become entitled to benefits as preference beneficiaries, they shall share equally.

"Benefits for loss of life of any insured family member will [be] payable to the Insured, if living, otherwise in the same manner as above."

The respondent contends that the applicable classes of successive preference beneficiaries are the relatives of Maria Rivas, while the petitioners contend that the applicable classes of successive preference beneficiaries are the relatives of Tran. The respondent further contends that, if the applicable classes of successive preference beneficiaries are the relatives of Tran, then they are disqualified by the slayer's rule from taking the insurance benefits.

CNA responded to the conflicting claims by interpleading the claimants in the Circuit Court for Montgomery County. There were cross-motions for summary judgment. The circuit court agreed with the respondent's construction of the Policy and, in *dicta*, commented that the slayer's rule did not apply. The Court of Special Appeals agreed with the petitioners' construction of the Policy, but held that the slayer's rule did apply. *Diep*, 126 Md.App. at 141, 727 A.2d at 452. This Court issued the writ of certiorari. *Diep v. Rivas*, 355 Md. 610, 735 A.2d 1105 (1999).

I

The essence of the circuit court's interpretation is the following part of that court's opinion from the bench.

"There are definitions within the policy. For example, the definitions say 'insured' means eligible person. Under 'eligible person' the family members are included.

"The policy states under the caption of eligible persons, all persons described in Statement 2 are eligible for insurance under this policy. Included in Statement 2 are an insured employee, an insured spouse, and insured dependent children."

This interpretation fails to distinguish between the "Insured" and an insured under the Policy. To demonstrate our conclusion requires a dissection of the Policy.

In the master policy persons who are "eligible for insurance" under the Policy are defined as "eligible persons," and they are "[a]ll persons described in … the Application." The "Application" states that all "[a]ctive, full-time employees" of IIT were eligible for the insurance program. Tran was an "eligible person" who became a participant in the program. Under the definitions in the Policy he thereby became an "Insured" (" 'Insured' means the eligible person whose insurance is in force under the terms of this policy."). Under the definitions of the form certificate, Tran thereby became a "You" (" 'You', 'Your' and 'Yours' mean the person to whom this certificate is issued and whose insurance is in force under the terms of the policy.").

The master policy further provided that "[t]he eligible persons becoming insured under this policy may also insure their eligible family members." "Eligible family members" were described in the "Application." The "Application" specified such persons to be "[t]he spouse, age 18 through age 70[,] of [an] insured employee" and certain unmarried dependant children of an "Insured (or spouse of the Insured)." Under the master policy Maria Rivas became an "Insured Person." The master policy defines " 'Insured Person' [to] mean[ ] the Insured and the insured family members of the Insured." In the certificate " 'Insured Person' means You and any of Your

eligible family members who are covered under the policy." [3]

Under the "Payment of Claim" provision of the master policy, set forth above, "[b]enefits for loss of life of any insured family member will [be] payable to the Insured, if living, otherwise in the same manner as above." For purposes of this case the parties have asked that we accept as fact that Maria Rivas predeceased Tran. Applying the Policy's definitions to the facts of this case, the "insured family member" was Maria Rivas, and the "Insured" was Tran. But Tran was the slayer of Maria Rivas and disqualified. Consequently, under the Policy, the benefits for the loss of life of Maria Rivas were payable "in the same manner as above." The "manner as above" deals with the "[b]enefits for loss of life of the Insured." Those benefits are payable to "the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives the Insured," namely, "[t]he Insured's (a) spouse; (b) children . . .; (c) parents; (d) brothers and sisters; or (e) estate." Maria Rivas did not survive the "Insured." Accordingly, the Policy proceeds are not payable to her estate. There were no children of the "Insured" and no surviving parents of the "Insured." Consequently, the petitioners, Tran's brother and sister, who comprise the first class of successive preference beneficiaries surviving the "Insured" receive the benefits pursuant to the Policy, if the terms of the Policy control.

---

3. There is no substantial difference between the "Payment of Claim" provision in the Policy and that provision in the insurance certificate. In the certificate the provision in relevant part reads:

"Benefits for Your loss of life will be payable in accordance with the beneficiary designation in effect at the time of payment. If no such designation is in effect at that time, the benefits shall be paid to the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives You: "Your (a) spouse; (b) children . . .; (c) parents; (d) brothers and sisters; or (e) estate. . . . If two or more persons become entitled to benefits as preference beneficiaries, they shall share equally.

"Benefits for loss of life of any insured family member will be payable to You, if living, otherwise in the same manner as above."

Respondent finds support for his construction of the policy in *St. Paul Fire & Marine Insurance Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981). *Molloy* had cited with approval the following language set forth in *Howell v. Ohio Casualty Insurance Co.*, 130 N.J.Super. 350, 327 A.2d 240, 243 (App. Div.1974):

> " '[T]here is much to commend the view that, unless the terms [of an insurance policy] are plainly to the contrary ... the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent co-insureds to the extent of their respective interests in the property involved.' "

*Molloy*, 291 Md. at 153, 433 A.2d at 1142 (second alteration in original). Respondent also relies on *Rent–A–Car Co. v. Globe & Rutgers Fire Insurance Co.*, 158 Md. 169, 148 A. 252 (1930), for the proposition that Maryland courts have construed insurance contracts as providing coverage to insured interests separately.

In both of these property insurance cases there were co-insureds to whom the policies had been issued. In *Molloy* a homeowners' policy designated " 'Charles J. Molloy and Diane M. Molloy,' " a husband and wife, as the " 'named insured.' " 291 Md. at 152, 433 A.2d at 1142. Likewise, in *Rent–A–Car Co.* a fire policy covering a fleet of rental automobiles that were security for a purchase money loan specifically listed both the owner-debtor and the secured party as the assured. 158 Md. at 173, 148 A. at 254. The *Molloy* and *Rent–A–Car Co.* cases would have some relevance if the Policy in the instant matter provided, for example, that on the death of an insured person the death benefit would be paid one-half to Tran and one-half to some other beneficiary. If the other beneficiary were innocent, Tran's crime would not disqualify that person. *Molloy* and *Rent–A–Car Co.*, however, are not authority for altering the precise definitions in the Policy to convert the single "Insured," Tran, into two "Insureds," or to alter "Insured" into the separately defined term, "Insured Person."

## II

■ By following the definitional trail that we have set forth above, the Court of Special Appeals also concluded that the Policy directed payment to classes of contingent beneficiaries that were relatives of Tran. That court next addressed the petitioners' contention that the circuit court had erred in failing to grant summary judgment in favor of the petitioners. There was no error, the appellate court held, because the *petitioners* were barred by the slayer's rule. We do not agree.

■ In Maryland, the slayer's rule exists as a matter of public policy embodied in the common law. This Court first applied the doctrine in *Price v. Hitaffer,* 164 Md. 505, 165 A. 470 (1933), a case in which a husband murdered his wife and almost immediately thereafter committed suicide. The wife died intestate, and an orphans' court excluded the heirs and personal representatives of the murderer from the distribution of the victim's estate. The Court stated the issue to be: "Can a murderer, or his heirs and representatives through him, be enriched by taking any portion of the estate of the one murdered?" *Id.* at 506, 165 A. at 470.

*Price* held that the statutes of descent and distribution must be construed in light of the strong public policy represented by

> "[o]ne line of decisions [that] apply the common-law principle of equity that no one shall be permitted to profit by his own fraud, to take advantage of his own wrong, to found any claim upon his own iniquity, or to acquire property by his own crime, and hold that provisions of a will and the statutes of descent and distribution should be interpreted in the light of those universally recognized principles of justice and morality; that such interpretation is justified and compelled by the public policy embraced in those principles or maxims, which must control the interpretation of law, statutes, and contracts."

*Id.*

The slayer's rule was applied in *Chase v. Jenifer,* 219 Md. 564, 150 A.2d 251 (1959), to disqualify a wife who was the

named beneficiary of insurance on her husband's life from receiving the death benefits where the wife had killed the husband under circumstances constituting voluntary manslaughter, because "the killing [was] both felonious and intentional." *Id.* at 570, 150 A.2d at 255. There appears not to have been any contingent beneficiary named in the policy involved in *Chase.* The contest was between the victim's personal representative and the slayer, and the proceeds were paid to the victim's estate.

Whether the slayer's rule applies to homicides under circumstances constituting involuntary manslaughter was answered in the negative in *Schifanelli v. Wallace,* 271 Md. 177, 315 A.2d 513 (1974). We explained that

"[t]he rule which prevents a beneficiary who has intentionally killed the insured from recovering on an insurance policy is grounded on the public policy against permitting a wilful and felonious killer to profit by his felony. Thus, it has no application where even though the acts of the beneficiary cause death, they are without the intent to do so; where the death is the result of accident, or even when caused by such gross negligence on the part of the beneficiary that he is guilty of involuntary manslaughter, the beneficiary may still recover . . . ."

*Id.* at 188, 315 A.2d at 519 (citation omitted).

More recently, in *Ford v. Ford,* 307 Md. 105, 122, 512 A.2d 389, 398 (1986), we held that the slayer's rule does not apply to a person who was not criminally responsible within the meaning of Maryland Code (1982, 1985 Cum.Supp.), § 12–108(a) of the Health–General Article. In *Ford* a daughter had murdered her mother who left a will under which the daughter was the sole beneficiary. *Id.* at 107, 512 A.2d at 390. The contest was between the slayer and her brother who was a contingent beneficiary under the will. *Id.* Inasmuch as the holding in *Ford* permitted the daughter to inherit under the will, the alternate disposition to the brother did not come into effect. *Id.* at 125, 512 A.2d at 399.

In the instant matter the Court of Special Appeals extended the slayer's rule to the petitioners for two reasons, the first of which is as follows:

"The Dieps also state, and we agree, that they are not guilty of any wrongdoing. That fact, however, has no bearing on eligibility. If the law provided that innocent secondary beneficiaries were not excluded by the Slayer's Rule, the public policy reason for the rule would be eroded significantly and, arguably, the murder/suicide statistics would increase dramatically."

*Diep*, 126 Md.App. at 143, 727 A.2d at 453. This rationale conflicts with the principle underlying the slayer's rule. The rule is designed to prevent one from taking "advantage of his own wrong" or acquiring "property by his own crime." *Price*, 164 Md. at 506, 165 A. at 472. Inasmuch as the not criminally responsible murderer, see *Ford, supra,* and the person who kills another unintentionally, but through gross negligence, see *Schifanelli, supra,* may acquire property as a result of homicides committed by them, the petitioners, who are completely blameless in the murder of Maria Rivas, are not precluded from taking the Policy proceeds resulting from her death. Indeed, to visit the consequences of Tran's crime on his brother and sister conjures up the ghosts of corruption of the blood which is prohibited by Article 27 of the Maryland Declaration of Rights.[4]

The Court of Special Appeals also based its extension of the slayer's rule to the petitioners on an erroneous interpretation and application of a statement by this Court in *Ford.* In an introductory section of the *Ford* opinion, we summarized the Maryland law on the slayer's rule into two principles, and then stated that "[t]hese principles apply not only to the killer but

---

4. " 'Corruption of blood is, when any one is attainted of felony or treason, then his blood is said to be corrupt; by means whereof neither his children, nor any of his blood, can be heirs to him, or to any other ancestor, for that they ought to claim by him. And if he were a noble or gentleman before, he and all his children are made thereby ignoble and ungentle. . . .' *Termes de la Ley* 125 (1st Am. ed. 1812)," as quoted in Black's Law Dictionary 348 (7th ed.1999).

to those claiming through or under him." 307 Md. at 112, 512 A.2d at 392.[5] From the preceding sentence the Court of Special Appeals concluded:

"Tran never having acquired any right to the proceeds, the secondary beneficiaries have no interest to assert because their claim is through Tran as surviving brother and sister.

"The holding in *Ford* states expressly that the Slayer's Rule is applicable to those claiming 'through or under' the slayer. Tran's brother and sister are without question claiming through and under Tran, who was the insured as defined in the policy."

*Diep*, 126 Md.App. at 143, 727 A.2d at 453.

The sentence in *Ford* on which the Court of Special Appeals relies reiterates one aspect of the holding in *Price*. *Price* involved the slayer's claim to a husband's fifty percent share, under the facts of that case, in the victim's intestate estate. 164 Md. at 507, 165 A. at 471. There, although the husband committed suicide almost immediately after the murder, there was a brief interval during which he survived his murdered wife so that the claim to the fifty percent share was asserted by the heirs and personal representatives of the deceased slayer. The claim of the heirs and personal representatives was by and through the slayer because they claimed in the right of the slayer as surviving spouse. The Court rejected the claim by and through the briefly surviving spouse, not

---

**5.** The two principles were:

"A person who kills another

"a) *may not* share in the distribution of the decedent's estate as an heir by way of statutes of descent and distribution, or as a devisee or legatee under the decedent's will, nor may he collect the proceeds as a beneficiary under a policy of insurance on the decedent's life when the homicide is felonious and intentional;

"b) *may* share in the distribution of the decedent's estate as an heir by way of statutes of descent and distribution, or as a devisee or legatee under the decedent's will and *may* collect the proceeds as a beneficiary under a policy of insurance on the decedent's life when the homicide is unintentional even though it is the result of such gross negligence as would render the killer criminally guilty of involuntary manslaughter."

*Id.* at 111–12, 512 A.2d at 392.

because the heirs and personal representatives were disqualified themselves by the slayer's rule, but because the slayer, at the instant of the murder, lost his interest in the victim's estate. *Id.* at 508, 165 A. at 471.

The foregoing is made plain by the passage in the *Price* opinion in which the Court rejects an argument that application of the slayer's rule violated Article 27 of the Maryland Declaration of Rights. The opinion in *Price* in relevant part reads:

"In the view that we take of the case, the constitutional and statutory prohibition against corruption of blood and forfeiture of estate by conviction has no application, because by reason of his murderous act the husband never acquired a beneficial interest in any part of his wife's estate. These provisions apply to the forfeiture of an estate held by the criminal at the time of the commission of the crime, or which he might thereafter become legally or equitably entitled to. In other words, it is a constitutional declaration against forfeiture for a general conviction of crime. There can be no forfeiture without first having beneficial use or possession. One cannot forfeit what he never had. The surviving husband in the case before us, never having acquired any interest in his wife's estate, there is nothing upon which the constitutional or statutory prohibition can operate. By virtue of his act he is prevented from acquiring property which he would otherwise have acquired, but does not forfeit an estate which he possessed."

*Id.* (citations omitted).

In the instant matter the petitioners do not claim through or under or in the right of Tran. Because Tran murdered Maria Rivas, he never acquired the right to collect the death benefits, just as the murderer in *Price* never acquired the right to take as surviving husband under the inheritance statutes. Further, if the insurance policy in the instant matter named Tran as the sole beneficiary, and his personal representative sought to collect from CNA on Tran's purported contract right, the "through or under" language from *Ford*

would be applicable. Similarly, the "through or under" language could ordinarily be applicable if Tran were the sole beneficiary, had murdered his wife but did not commit suicide, and then assigned his purported claim to the Policy proceeds to an innocent third party. Tran could not assign that which he did not possess.

Here, the facts do not fall within the "through or under" statement from *Ford.* The petitioners do not claim in the right of Tran. They claim based on the promise made by CNA to pay "the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives the Insured." Their claim is in their own right as contingent beneficiaries under the contract of insurance.

### III

In cases involving life insurance, where the policy provides both for a primary beneficiary and a contingent beneficiary and where the primary beneficiary is disqualified under the slayer's rule, the majority rule awards the policy proceeds to an innocent contingent beneficiary. In these cases typically the contest is between the estate of the insured and the contingent beneficiary. *See, e.g., Life Ins. Co. v. Cashatt,* 206 F.Supp. 410 (E.D.Va.1962); *Spencer v. Floyd,* 30 Ark.App. 230, 785 S.W.2d 60 (1990); *Beck v. West Coast Life Ins. Co.,* 38 Cal.2d 643, 241 P.2d 544 (1952) (opinion by Justice Traynor); *Seidlitz v. Eames,* 753 P.2d 775 (Colo.Ct.App.1987); *Carter v. Carter,* 88 So.2d 153 (Fla.1956); *Brown v. Life Ins. Co.,* 249 So.2d 79 (Fla.Dist.Ct.App.1971); *Metropolitan Life Ins. Co. v. Wenckus,* 244 A.2d 424 (Me.1968); *Lamb v. Northwestern Nat'l Life Ins. Co.,* 56 Md.App. 125, 467 A.2d 182 (1983) (applying D.C. law on double indemnity in contest between insurer and contingent beneficiaries); *Lee v. Aylward,* 790 S.W.2d 462 (Mo.1990); *Gardner v. Nationwide Life Ins. Co.,* 22 N.C.App. 404, 206 S.E.2d 818 (1974), *cert. denied,* 285 N.C. 658, 207 S.E.2d 753 (1974); *National Home Life Assurance Co. v. Patterson,* 746 P.2d 696 (Okla.App.1987); *Brooks v. Thompson,* 521 S.W.2d 563 (Tenn.1975); 1B J.A.

Appleman, *Insurance Law and Practice* § 482 (1981); 4 *Couch on Insurance 3d* § 62:19 (1997). In these cases the courts reason, expressly or impliedly, that looking to the terms of the contract best effectuates the intent of the insured.

The minority position is that if the primary beneficiary survives the insured, but is disqualified under the slayer's rule, then the insured's estate recovers, rather than the contingent beneficiary, because the contingency that the primary beneficiary predecease the insured has not been satisfied. *See Beck v. Downey*, 191 F.2d 150 (9th Cir.1951), *vacated on other grounds*, 343 U.S. 912, 72 S.Ct. 646, 96 L.Ed. 1328, *reaff'd*, 198 F.2d 626, *cert. denied*, 344 U.S. 875, 73 S.Ct. 170, 97 L.Ed. 678 (1952); *Webb v. Voirol*, 773 F.2d 208, 212 (8th Cir.1985) (applying then Missouri law; recognizing majority rule to be contrary to holding); *Reliable Life Ins. Co. v. Spurgeon*, 763 S.W.2d 674, 676 (Mo.Ct.App.1988) (given no "particular weight" by Missouri Supreme Court in *Lee v. Aylward*, 790 S.W.2d at 463); *Bullock v. Expressmen's Mut. Life Ins. Co.*, 234 N.C. 254, 67 S.E.2d 71, 74–75 (1951);[6] *Crawford v. Coleman*, 726 S.W.2d 9 (Tex.1987) (based on statute); *Dowdell v. Bell*, 477 P.2d 170 (Wyo.1970).

In the instant case the condition for payment to any contingent beneficiary has not been met because Tran, the "Insured," briefly survived his spouse. As a matter of substance, however, Tran, because of his suicide, cannot benefit in any way from an award of the proceeds to the petitioners. Compare *Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473, 478, 476 (7th Cir.) (opining that Illinois rule "requir[ing] the trial court to make a factual determination whether allowing a relative of the murderer to take ... is likely to confer a substantial benefit on [the murderer] ... requires an inherently speculative judgment about the future and an investigation of family relations quite likely to be of Faulknerian opacity" and "impress[es] on the benefits a kind of reverse

---

6. The rule in *Bullock* was changed by legislation to the majority position. *See Brooks v. Thompson*, 521 S.W.2d 563, 566 (Tenn.1975).

constructive trust placing them forever beyond the murderer's reach"), *cert. denied sub nom. Athmer v. Hill,* —— U.S. ——, 120 S.Ct. 342, 145 L.Ed.2d 267 (1999).

Most of the cases that follow the majority rule differ from the instant matter in that the insured-victim was also the owner of the policy and selected the contingent beneficiaries. Here Tran, by not specially designating beneficiaries, left in effect as contingent beneficiaries the classes of persons predetermined in the Policy. This is not a difference of substance under the facts of this case. Tran's default selection of contingent beneficiaries seems to have been made more than five years before the murder. What is more important, there is not a suggestion that the petitioners were accomplices in that crime. Further, even if one assumes that a motive on the part of the murderer to benefit innocent contingent beneficiaries were relevant, there is no evidence of such a motive presented here.

A distinction was drawn between the naming of contingent beneficiaries by the insured-victim and the naming of contingent beneficiaries by the slayer-owner in *Estate of Jeffers,* 134 Cal.App.3d 729, 182 Cal.Rptr. 300 (1982). There a wife, approximately six months after designating a trust for the benefit of her children as the contingent beneficiary of a policy on her husband, murdered her husband and then committed suicide. The court held that the proceeds were payable to the estate of the insured, reasoning that "the primary beneficiary who killed the insured should be denied the right *by any means* to specify the recipient of the insurance proceeds and thereby profit from [her] own wrong." *Id.* at 304.

The rule enunciated in *Estate of Jeffers* outruns the reach of the Maryland public policy underlying the slayer's rule in this State. This Court, in *Price,* 164 Md. at 511–12, 165 A. at 472–73, quoted extensively from the opinions in *Cleaver v. Mutual Reserve Fund Life Association,* 1 Q.B. 147 (1892). The reach of the slayer's rule in Maryland substantially coincides with the statement found in the opinion of Lord Justice Fry in *Cleaver* where he said:

"[T]he rule of public policy should be applied so as to exclude from benefit the criminal and all claiming under her, but not so as to exclude alternative or independent rights.... In a word, it appears to me that the crime of one person may prevent that person from the assertion of what would otherwise be a right, and may accelerate or beneficially affect the rights of third persons, but can never prejudice or injuriously affect those rights."

*Id.* at 159–60.

## IV

In its opinion in the instant matter the Court of Special Appeals, when directing that the insurance proceeds be paid to the respondent, stated:

"The payment provisions for loss of life of an insured family member ... are payable to the insured, if living, 'otherwise in the same manner as above.' A reasonable interpretation of the phrase 'in the same manner as above' means to follow the schedule of successive beneficiaries of the deceased family member. It does not mean to select the next in line of the insured's family."

*Diep,* 126 Md.App. at 145, 727 A.2d at 454. We do not read the above-quoted passage to set forth an interpretation of the Policy, absent imposition of the slayer's rule. That reading would conflict with the interpretation of the Policy by the Court of Special Appeals described in Part I, *supra,* with which we agree. Further, if the above-quoted passage represented the interpretation of the Policy, absent the slayer's rule overlay, there would have been no need for the Court of Special Appeals to apply the slayer's rule to the petitioners, and that court would have awarded the respondent the proceeds by the terms of the Policy. Rather, we read the above-quoted passage to be a "reasonable interpretation" when, in the view of the Court of Special Appeals, the petitioners were disqualified.

Our prior rulings in this opinion require rejection of the solution applied by the Court of Special Appeals. First, the petitioners are not barred under the slayer's rule. See Part II, *supra*. Second, inasmuch as the petitioners are eligible contingent beneficiaries, they take the proceeds by operation of the Policy's provisions. See Parts I and III, *supra*.[7]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A MANDATE REVERSING THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMANDING THIS ACTION TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH DIRECTIONS TO ENTER JUDGMENT IN FAVOR OF THE PETITIONERS, AN DIEP AND VANESSA DIEP.*

*COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT, HECTOR RIVAS.*

---

**7.** In this Court the petitioners briefed a prejudgment interest issue. For reasons not material here, CNA had not deposited the contested $150,-000 in the registry of the circuit court after the court authorized that deposit. Thus the circuit court included in its final judgment an order to CNA to pay interest on the death benefits from the time that the circuit court had authorized or directed deposit of the proceeds in the registry to the time when the order was signed that resulted in the final judgment. Petitioners contend that additional prejudgment interest should have been awarded for the period from the petitioners' demand on CNA for payment to the time when prejudgment interest began to run as ordered by the circuit court. This prejudgment interest issue was not included by the petitioners in their petition for certiorari, and we do not consider it.